Reams, J.
 

 It is to be considered for the first time, whether a deed of separation between husband and wife, will be enforced in this court.
 

 The relation of husband and wife is at the foundation of society. It is natural, as well as conventional. It was the relation of the first pair of our race, and has existed ever since. It is universal in civilization, and not uncommon in barbarism, ft is indispensable to that other important relation of parents and children. Incident to it are its inseparable and indissoluble characteristics — its oneness — “they shall be no longer twain but one flesh,” “to live
 
 together
 
 after God’s holy ordinance,’’ “so long as they both shall live.” But little legislation is necessary to define and regulate it. Wo know it by intuition. It is induced by the strongest passion of the human soul, love. It is the most endeared relation which nature makes, or society forms. When lusts entice, or wealth prompts the relation, it may prove a curse when the one is satiated and the other wasted; but when love, virtuous and disinterested, ardent and mutual, prompts the relation, it is incomparable. Such is the relation as it exists with us. It is formed in perfect freedom. There are no constraints of parents, of custom, or of laws; nor any influences but such as are conducive to its happiness. It is formed in perfect simplicity, and preserved in religious purity. The husband is the stronger, and rules as of right; the wife is the weaker, and submits in gentleness. The frailties of each are excused or forgiven; their
 
 *156
 
 sentiments are in unison; their manners in conformity; their interests the same; their joys and sorrows mutual; their children are a common bond, and a common care; and they live, not separately, but,
 
 together
 
 — -the nursery of morality and piety; and the bulwarks of society.
 

 How different from this is marriage, quarrel, separation ! — the anomalous condition of a husband without a' wife, a wife without a husband, parents without children, and children without parents! Such relations too surely follow
 
 deeds of separation. ■
 
 Let it be understood that marriage is only an experiment, to be formed inconsiderately, and broken capriciously; to be put on and off like a garment; that husband and wife may have separate establishments, in which to nurse their hate, and cover their irregularities; that children may be trained to hate one parent or both, and to have the care of neither; and society to have constantly in view the nuisance of their infidelities; and what greater evil can be imagined.
 

 It is to be admitted, that in some of the old governments, passions and vices have fixed this evil upon society. It Avas unknown to the common law. Roper in his treatise on husband and Avife, 2d vol. p. 267, says: “This kind of separation is the offspring of late years, and totally unknown, to the common law; and the observation must be repeated, that, as in the other innovations upon that law, so in this instance, the legal acknowledgment of this species of divorce has introduced in the administration of justice considerable difficulties and perplexities. According to the original policy of England, the Ecclesiastical Courts had exclusive jurisdiction of the rights and duties arising from the state of marriage, and they acknowledged no such kind of divorce as that under consideration. They did not permit the parties, by voluntary compact, to alter those rights and duties, and in so doing they prevented those anomalous cases which have occurred since the establishment of the
 
 *157
 
 doctrine in courts of law and equity, that a separation
 
 in ■pais
 
 is in effect valid, and that while it continues, the wife is to be considered, in most respects, as a
 
 feme sole.”
 

 Since this evil has attached to English society, learned Judges have strongly condemned it; but too much property now depends upon it to disturb it. There has been no decision, and so far as we know there has not been even a
 
 dictum
 
 in its favor in this State. In
 
 Elliot
 
 v.
 
 Elliot,
 
 1 Dev. & Bat. Eq., 57, which was a bill to set up a conveyance by a husband to his wife, without the intervention of a" trustee, Ruffin
 
 C. J.,
 
 says: “In England it has certainly been held that a gift by the husband to the wife, without the intervention of a trustee, may be made under such circumstances as to render it valid in equity, and induce that court to constitute the husband himself the trustee. No case of that sort has occurred in this State; and, perhaps, the court might not feel the obligation to encourage the obtaining such donations, or the creation of separate interests in the wife, subject to her immediate and absolute control during the marriage, by an act between the husband and wife themselves, which is inoperative at law.”
 

 And in
 
 McKinnon
 
 v.
 
 McDonald,
 
 4 Jon. Eq., 1, where a wife claimed her separate earnings against the husband’s creditors,
 
 Pearson, C. J.,
 
 said: “The case presents this question: Does the doctrine of ‘ pin money,’ by which, in the English Equity Jurisprudence, a husband is allowed to give his wife the privilege of working for herself, acting as a free trader, and of acquiring profits by her earnings and savings, which neither he nor his creditors can reach, obtain in this State ? After much consideration we are satisfied that it does not; because it is inconsistent with our legislation in regard to the rights and duties of husband and wife; it is at variance with the habits and usages of our people, and tends to produce an artificial and complicated state of things; so that, while at law the wife’s existence is. consid
 
 *158
 
 ered as merged in that of her husband, her earnings axe his, she cannot contract or sue and be sued; in equity she is entitled to her earnings, may act as a free trader, acquire property, sue and be sued in respect thereto.
 

 “ We thus regret another of those refined doctrines of equity jurisprudence which render the English system so. extremely artificial and complicated, and add pin money
 
 to>
 
 the list of ‘ part performance,’ ‘ the lien of a vendor for the purchase money,’ “1 the duty of the purchaser to see to the application of the purchase money’ and the wife’s equity for a settlement.”
 

 Those cases arc only in ¡mint to show that in kindred subjects our courts have desired to avoid every appearance of countenancing the separate relations of husband and wife, and to hold, “that in respect to fortune, as in other things affecting their happiness, they intend by marriage to embark in the same bottom and to sink or swim together.”
 

 If there were any doubt as to our policy it would seem to. be clearly settled by our legislation. Important as the relation is, our whole legislation is comprised in a few pages of the Revised Code. It provides that marriage shall be indissoluble except for impotency at the time of marriage, or subsequent infidelity. It allows separation only where the wife’s condition is intolerable, or life burdensome ! And it allows separate support only -where the husband is a drunkard or spendthrift, and is wasting’ his substance to the impoverishment of his family. And in all these cases the parties are not allowed to be the judges; but they must make application to court, and so far from their consent availing anything, there must be satisfactory proof that there has been no collusion or concert; and if for divorce, that it is not for flic mere purpose of being
 
 freed and separated
 
 from each other — observe,
 
 separated
 
 from each other.
 

 In contravention of this policy,-and in disregard of their*
 
 *159
 
 marriage vows, the parties in this case had “ difficulties ” and separated; and to avoid the wholesome control of the court, they .entered into an agreement by which the property was to bo divided between them, and each relinquished to the other all the marriage privileges and responsibilities, and were to live
 
 separately.
 
 Such a course, if allowed, would virtually annul our marriage laws, and make the relation of husband and wife a mere trade or bargain, dependant upon their caprice. It is true that the courts will not
 
 compel
 
 them to live together; but it is equally true that they will afford them no encouragement to separate, except in those cases provided by law.
 

 Thus much may be said where the separation is voluntary with both parties; but if allowed, it would open the door to fraud and imposition- by' one, to compel a separation and settlement on the part of the other. An imperious husband, secure from exposure in the courts, would practice cruelties towards a faultless wife, to compel a separation; and she, to buy her peace, -would take such terms as he might offer.
 

 "We do not know the facts „of this case, except that it seems that the wife was induced to take less than she is now satisfied with, or than the law allows her.
 

 We
 
 do not, however, put the case upon the ground of fraud or imposition on the part of the husband, but upon the broad ground that articles of separation between husband and wife, voluntarily entered into by them, either in contemplation of or after separation, arc against law and public policy, and will not be enforced in this court.
 

 The demurrer is overruled with costs.
 

 Pkr Curiam.
 

 Demurrer overruled.