OLLY SPARKS v. S. B. SPARKS et al.

*Husband and wife—Divorce—Condonation—Agreement to live separate.*

1. If the wife commit adultery, and the husband afterwards lives with her, and keeps up the connubial relations, a divorce will not be granted.

2. Whether deeds for separation between husband and wife, are against public policy and void in this State, *quære.* It would seem, that under §1831 of The Code, they are valid for some purposes at least, but even if they are void, while the Courts may refuse to carry them out, they will not undo any act of the parties which they may have done for this purpose.

3. The rule that the Courts will never aid a party, when the contract is *contra bonos mores*, is only departed from, when oppression, imposition, hardship, undue influence, or great inequality of condition or age is shown.

4. Where a husband and wife executed a deed of separation, a part of the consideration of which was, that the husband should relinquish his estate by the curtesy in a part of the wife's land, and that she should convey another portion of her land to a trustee for him in fee, which was done, the wife cannot maintain an action to have her deed to her husband's trustee cancelled, on the ground that the deed of separation was against public policy, in the absence of any undue influence or oppression exercised by the husband to obtain the deed.

(*York* v. *Merritt*, 77 N. C., 213; *Same case*, 80 N. C., 285; *Pinckston* v. *Brown*, 3 Jones's Eq., 494; *Wright* v. *Cain*, 93 N. C., 296, cited and approved; *Collins* v. *Collins*, Phil. Eq., 153, doubted).

CIVIL ACTION, tried before *Graves, Judge*, and a jury, at Fall Term, 1883, of the Superior Court of YANCEY county.

During the progress of a suit instituted by the plaintiff against the defendant, for a severance of the marital relations subsisting between them, a compromise arrangement was entered into between them of the following import: " Whereas, the said Olly Sparks, being the wife of said Samuel B. Sparks, has brought suit against the said Samuel B. Sparks, for divorce and alimony and the recovery of certain lands belonging to the said Olly, *feme* plaintiff, which suit is now pending in the Superior Court of Madison county in said State ; And whereas the said party defendant, Samuel B. Sparks, is tenant by the curtesy, and holds such interest in the lands claimed by said Olly in said action : Now, in consideration that the said Samuel B. Sparks has relinquished his interest, as such tenant by the curtesy, of, in and to a certain portion of land owned by said Olly, and has joined in a conveyance to Batis Randolph, son of said Olly Sparks the *feme* plaintiff, the said Olly Sparks agrees by these presents, to enter a *nol. pros.* in said suit, without costs to the said Samuel B. Sparks, and release him from all claims to dower, alimony or any other claim or right which may have accrued to her, in consequence of her marriage with the said Samuel B. Sparks. In testimony whereof, the said Olly Sparks and Samuel B. Sparks have hereunto set their hands and seals. And the said Samuel B. Sparks binds himself that he will not attempt to exercise any control over the person or property of the said Olly Sparks, either which she now owns or may hereafter acquire, sealed with our seals.

S. B. SPARKS, (Seal.)<br>
OLIVE SPARKS, (Seal.)

Test: G. B. MOODY.

This instrument was duly acknowledged before the Judge of probate, and the private examination of the *feme* taken, upon whose certificate it was, on April 25, 1874, admitted to registration.

At the time of its execution, and just afterwards, the parties executed a deed, conveying a certain other tract of land, belonging to the *feme* plaintiff, estimated to contain fifty acres, and within special boundaries, for a recited consideration of three hundred dollars, to R. H. Penland, one of the defendants, who let the defendant into possession of the premises, and he has since received the rents and profits thereof.

The defendant, after the execution of the agreement first mentioned, in an action against the plaintiff, prosecuted in the Superior Court of Mitchell county, obtained a judgment, divorcing him from the plaintiff, and annulling their marital relations.

The plaintiff avers that no consideration of any kind was paid or received for the conveyance to Penland, and that in the transaction in which she participated, she was unduly influenced by her husband, and the financial difficulties brought on, in her effort to get rid of his tyranny and selfish conduct. The demand is, that the agreement, as involving a contract for separation, be declared void, and also the deed to said Penland, executed in carrying it into effect, and the latter be declared a trustee for the plaintiff.

The defendant in his answer, admits the execution of the agreement and deed set out in the complaint, and says that all was done at the solicitation of the plaintiff, her friends, relations and advisers; that at the time of their intermarriage in 1860, the plaintiff had two children by a former husband, one of whom soon died, and the other, the said Batis Randolph, still survives, and one child, Zebulon V. Sparks, has been born to them since; that soon after the birth of this child, the defendant entered into the service of the Confederate States, and was absent some eighteen months; that upon his return, he found that the plaintiff, about seventeen months after he had left, had given birth to another and an illegitimate child, and her affections had been withdrawn from himself; that after his own child was born, as he then had an estate for life in his wife's lands, he put valuable improvements upon them, in the expectation of reaping the ben-

efits thereof in possession and use; that the arrangement detailed in the complaint was brought about through the said Batis, after he had arrived at full age, her uncle, B. S. L. Dayton, and others, from whom came the suggestion of the compromise, which was to this effect:

The plaintiff and defendant were to unite in a deed to said Batis, for about sixty acres of the land owned by her, including the dwelling house and improvements, and the plaintiff was to release her estate to the defendant in the remainder of the tract, consisting of about fifty acres. This agreement was carried out in the execution of the first mentioned instrument, of the deed to Batis, and of that to Penland, who received the title in trust for the defendant, and to convey to him.

The defendant further denies all imputations upon his conduct and good faith in all that occurred. Batis Randolph was made a party plaintiff in the action, and thereupon a jury was empannelled to pass upon the following issues, and rendered their verdict upon each as follows:

"I. Was the plaintiff induced by force of the defendants, or either of them, to join in the execution of the deed to the defendant Penland? Answer, No.

"II. Was it a part of the consideration which induced the execution of the deed to Penland, that the defendant Sparks and his wife should thereafter live separate from each other? Answer, Yes.

"III. Was the consideration, or any part of it, which induced the defendant Sparks to execute the deed to the plaintiff Batis Randolph, that the feme plaintiff should join in making the deed to the defendant Penland? Answer, Yes,"

Upon the undisputed facts, and the findings of the jury, it was adjudged by the Court, that the said deeds and agreement be annulled, and that the plaintiff, Ollie Sparks, is the owner in fee of the lands sued for, and entitled to the possession thereof, as well as the rents and profits thereof, since the rendering of the decree of divorce, to be ascertained hereafter.

From this judgment the defendant appeals.

*Mr. R. H. Battle,* for the plaintiff.

*Mr. John Devereux, Jr.,* (*Mr. Jos. B. Batchelor* was with him,) for the defendant.

SMITH, C. J., (after stating the facts). It is to be observed, that the alleged agreement, held by the Court to enter into and vitiate the entire transaction, so as to render both deeds inoperative, is not in any written form, but rests entirely in parol. Not a word is said about the separation of the parties, unless it be found in the defendant's stipulation, that he will thereafter " not attempt to exercise any control over the person or property " of his wife, which may pre-suppose their future living apart. Again, it would seem that the separation had already taken place, and existed when the arrangement was entered into. The *feme,* during her husband's absence, had committed adultery, and had he kept up their connubial relations, it would have been a condonation of her proved faithlessness to her marriage vows, and he would have been refused a divorce *a vinculo matrimonii.* This the law did not require of him, and the absolute separation was afterwards secured by the judgment of the Court, in his action against her.

The ruling of the Court was probably founded on the case of *Collins* v. *Collins,* Phill. Eq., 153, in which READE, J., after an examination of authorities, announces the conclusion arrived at in these words : " We do not, however, put the case upon the ground of fraud or imposition on the part of the husband, but upon the broad ground that articles of separation between husband and wife, voluntarily entered into by them, either in contemplation of, or after separation, are *against law and public policy, and will not be enforced.*"

It may admit of question, in view of subsequent changes in the law of marriage, in respect to the property rights of the woman, whether the proposition, in its unlimited extent, can now be upheld. A voluntary separation, under some circumstances, is recognized as a legal condition, out of which may arise certain powers to be exercised over her estate.

" Every woman who shall be living separate from her husband, either under a judgment of divorce by a competent Court, or *under a deed of separation, executed by said husband and wife, and registered in the county in which she resides,*" &c., shall have the effect of making her a free trader.   The Code, §1831.

This act of legislation, passed in February, 1872, in furtherance of the constitutional provision, by which the property of the woman, on her marriage, is secured to her as separate estate, implies a *possible legal separation* of the parties, by voluntary agreements, and defines her condition and rights resulting therefrom.   If such a case can exist and be upheld by law, the facts of that before us would be one.   The wife had, during her husband's absence, kept up an adulterous intercourse, the fruit and proof of which was found in the birth of a child, whose support was to become a burden upon the husband.   Their continued living together thereafter in the marriage relation, was not required by any consideration of law or public policy, and would have denied to him the right to a judicial final separation, which he afterwards obtained.   The decision in the case referred to, is in general terms, that such contracts, merely as such, have no binding obligation which will be enforced, because public policy favors the preservation of the nuptial tie, and is opposed to any arrangement between the parties by which its resultant duties are evaded.

But the principle is, that such an agreement will not be enforced, at the instance of either party, not that what may have been done in carrying out its purpose will be undone by the Court.   It will not assist, when its aid is asked, or in the words of the Court, its provisions " will not be enforced in *this Court*"— a Court exercising equitable functions.   The rule that refuses to compel the execution of such a contract, for similar reasons refuses to relieve from the consequences of what the parties have done under it, in giving it full effect.

In *York* v. *Merritt,* 77 N. C., 213, the plaintiff sued to recover a tract of land, which under an unlawful and corrupt agreement,

had been conveyed by the defendant to the plaintiff. The Court, READE, J. speaking for it, said : " When both parties have united in a transaction to defraud another, or others, or the public, or the due administration of the law, or which is *against public policy, or contra bonos mores*, the Courts will not enforce it in favor of either party." The same ruling was made when the case came up on a second appeal, 80 N. C., 285.

The rule is departed from, when one of the parties acts " under circumstances of oppression, imposition, hardship, undue influence or great inequality of condition or age, so that his guilt may be far less in degree than that of his associate in the offence." They must be in *pari delicto.* 1 Story Eq., §300 ; *Pinckston* v. *Brown,* 3 Jones, Eq., 494 ; *Wright* v. *Cain,* 93 N. C., 296.

But the jury negative the plaintiff's averment that she was induced to execute her deed to Penland, from force used by the defendant, or (as the issue was submitted in this form, and responded to in the negative), by the exercise of any undue means on his part.

And the acknowledgment in the certificate of probate, stands in this respect uncontradicted. We do not see, in the deeds themselves, whereby the husband surrenders his estate by the curtesy in one tract, and acquires the fee in another tract, such inequality and evidence of oppression and wrong, as entitles the plaintiff to the relief she now demands. She has herself committed a grievous, if not unpardonable wrong to her husband, rendering their separation inevitable, and in view of it, they parted, and did what she now seeks to undo, and that separation has been made permanent by a judgment of the Court. Under the circumstances, this Court is not called on to intervene. The judgment must be reversed and the action dismissed, and it is so ordered.

Error.                                                    Reversed.