LORRAINE B. SPENCER v. RICHARD E. SPENCER

No. 7718DC823

(Filed 15 August 1978)

1. **Husband and Wife § 10; Constitutional Law § 4— constitutionality of privy examination statute—husband's lack of standing to raise**

    Defendant husband had no standing to attack the constitutionality of G.S. 52-6, since a ruling of unconstitutionality would result in the elimination of the privy examination altogether, not in a requirement that married males also undergo a privy examination, and such a holding would have absolutely no effect on defendant; moreover, even if the question of constitutionality were properly before the court and the court should uphold the validity of the statute made applicable to both sexes, defendant could show no injury since evidence supported the trial court's conclusion that, because of defendant's degree of education, experience, and sophistication and his excellent legal representation, defendant would not have benefited in any way from a private examination if one had been available to him.

2. **Husband and Wife § 11.2— separation agreement—amount of maintenance and support—improper determination**

    In an action to recover sums due under a separation agreement which provided that plaintiff should receive one-fourth of defendant's income for the preceding year, income being defined as adjusted gross income as shown on defendant's federal income tax return, the trial court erred in disallowing, for

the purpose of maintenance and support payments, adjustments to gross income due to losses on the rental of defendant's beach cottage since plaintiff, not defendant taxpayer, had the burden of proving that the property in question was not held for the production of income, and the court's findings as to part-time personal use and periods of vacancy did not support the conclusion that the acquisition and maintenance of the beach property was not an activity engaged in for profit and that defendant was entitled to deductions only under 26 U.S.C. 183.

APPEAL by defendant from *Yeattes, Judge.* Judgment entered 12 May 1977, District Court, GUILFORD County. Heard in the Court of Appeals 28 June 1978.

Plaintiff and defendant formerly were husband and wife. They entered into a separation agreement 7 June 1960. The agreement provided *inter alia* that plaintiff wife would receive, each year after 1 January 1972, in equal monthly installments, 25 percent of defendant's income for the preceding year for her maintenance and support. "Income" was defined as adjusted gross income as shown on his federal income tax return plus any capital gains deductions and any "tax-free" income. The expenses of the defendant deductible in arriving at adjusted gross income were to be "subject to reasonable additional scrutiny . . . so that the Wife shall not be subjected to unwarranted adjustments. . . ." An absolute divorce was granted in 1961.

Payments continued until 1976 when the defendant ceased making payments. Also, plaintiff contends, insofar as this appeal is concerned, that the 1975 payments were deficient in that defendant claimed an unwarranted deduction. Plaintiff sought a similar adjustment to the 1976 reported adjusted gross income for certain of that year's deductions. Plaintiff alleged, and offered evidence tending to prove, that she was entitled to the payments.

Defendant answered admitting plaintiff's allegations except for the contentions that he claimed unwarranted deductions. As a defense, defendant alleged that the agreement was void because G.S. 52-6, with which the parties had complied, unconstitutionally denied him the right to a privy exam.

At trial, the only genuine dispute as to unwarranted deductions was over deductions claimed for a beach cottage owned by defendant and his present wife. Defendant asserted that he held the cottage as rental property. He testified that he advertised the

property for rent and rented it some. He also used the property personally one to three weeks a year. The cottage remained unoccupied some of the time. Defendant's tax returns for 1974 and 1975 reflected a loss on this property.

The trial court held that G.S. 52-6 was not violative of either the United States Constitution or the Constitution of North Carolina. The court further held that, as to the beach cottage, "it cannot be concluded that the acquisition and maintenance of this property was an activity engaged in for profit. . . ." The court held that defendant could deduct only the cost of taxes and interest on the cottage. This holding was expressly pursuant to 26 U.S.C. § 183 which provides, in pertinent part:

"In the case of an activity not engaged in for profit . . . , there shall be allowed —

(1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and

(2) a deduction equal to the amount of deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1)."

The court entered judgment for plaintiff for 25 percent of the unwarranted deduction claimed on the 1974 return (the amount by which the 1975 payments were affected); for the full amount of 1976 payments including the adjustment for the unwarranted deduction; and for the full amount for the first three months of 1977.

From that judgment, defendant appeals.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Norman B. Smith, for plaintiff appellee.*

*Janet L. Covey for defendant appellant.*

MORRIS, Judge.

We will address first the constitutional issues raised by defendant's appeal. Defendant alleges that G.S. 52-6 is violative of

the equal protection clauses of the United States Constitution and the Constitution of North Carolina; that G.S. 52-6 confers a valuable right upon women; and that the separation agreement would be void had the plaintiff not been subject to a privy exam. He concludes that the proper means by which to cure the constitutional defect of G.S. 52-6 is to treat him as if he were a woman who had been denied a privy exam and to declare the separation agreement void since he has been denied the valuable right of a privy exam. Plaintiff summarily dismisses defendant's argument. She contends that this case is controlled by *Butler v. Butler*, 169 N.C. 584, 86 S.E. 507 (1915). We do not feel that defendant's arguments should be so lightly dismissed; nor do we believe that the present case is necessarily controlled by *Butler v. Butler*, supra.

In addressing defendant's argument, we must first examine the history behind G.S. 52-6. At common law, the fiction of the unity of husband and wife rendered all deeds of separation void. Our Court was especially troubled by the possibility of a separation agreement.

"The relation of husband and wife is at the foundation of society. It is natural, as well as conventional. It was the relation of the first pair of our race, and has existed ever since. It is universal in civilization, and not uncommon in barbarism. It is indispensable to that other important relation of parents and children. Incident to it are its inseparable and indissoluble characteristics — its oneness — 'they shall be no longer twain but one flesh,' 'to live *together* after God's holy ordinance,' 'so long as they both shall live.' . . . It is formed in perfect simplicity, and preserved in religious purity. The husband is the stronger, and rules as of right; the wife is the weaker, and submits in gentleness. The frailties of each are excused or forgiven, their sentiments are in unison; their manners in conformity; their interests the same; their joys and sorrows mutual; their children are a common bond, and a common care; and they live, not separately, but *together* — the nursery of morality and piety, and the bulwarks of society.

How different from this is marriage, quarrel, separation! — the anomalous condition of a husband without a wife, a wife

without a husband, parents without children, and children without parents! Such relations too surely follow *deeds of separation.* . . .

\* \* \*

Thus much may be said where the separation is voluntary with both parties; but if allowed, it would open the door to fraud and imposition by one to compel a separation and settlement on the part of the other. An imperious husband, secure from exposure in the courts, would practice cruelties towards a faultless wife, to compel a separation; and she, to buy her peace, would take such terms as he might offer.

\* \* \*

We do not, however, put the case upon the ground of fraud or imposition on the part of the husband, but upon the broad ground that articles of separation between husband and wife, voluntarily entered into by them, either in contemplation of or after separation, are against law and public policy, and will not be enforced in this court." *Collins v. Collins*, 62 N.C. 153, 155-159 (1867).

Though the Court had earlier raised questions concerning the continuing validity of *Collins v. Collins, supra,* in such cases as *Sparks v. Sparks*, 94 N.C. 527 (1886), it was not until 1912 that the Court expressly upheld the validity of a separation agreement. In *Archbell v. Archbell*, 158 N.C. 408, 74 S.E. 327 (1912), the Court held that

"In *Collins v. Collins*, 62 N.C., 153, the Court made definite decision 'that articles of separation between husband and wife, whether entered into before or after separation, were against law and public policy and therefore void.' Since that decision was rendered in 1867, our statutes upon 'Marriage and Marriage Settlements and Contracts of Married Women' as entitled in The Code of 1883 and contained with amendments in Revisal 1905, ch. 51, have made such distinct recognition of deeds of this character, more especially in Revisal, secs. 2116, 2108, 2107, etc., that we are constrained to hold that public policy with us is no longer peremptory on this question, and that under certain conditions these deeds

are not void as a matter of law. This change in our public policy, which has been not inaptly termed and held synonymous with the 'manifested will of the State,' *Jacoway v. Benton*, 25 Arkansas, 634, has been already recognized in several of our decisions, as in *Ellett v. Ellett*, 157 N.C., 161; *Smith v. King*, 107 N.C., 273; *Sparks v. Sparks*, 94 N.C., 527. . . ." 158 N.C. at 413, 74 S.E. at 329.

Revisal 1905, chapter 51, section 2107, the statute which governed *Archbell v. Archbell*, supra, provided that contracts between a husband and wife would be effective to transfer any interest in real estate, including the income interest, for longer than three years, only if the wife were privately examined. (Its wording closely parallels the language of G.S. 52-6.) Section 2108 of chapter 51 of the Revisal of 1905 validated contracts executed in conformity with section 2107, and section 2116 of that same chapter conferred "free trader" status upon a woman separated under a deed of separation. These provisions parallel the earlier provisions of sections 1831, 1835, and 1836 of chapter 42 of the Code of 1883.

One can see that the forerunner of G.S. 52-6 was viewed as an act increasing the rights of women. In *Sims v. Ray*, 96 N.C. 87 (1887), the Court in discussing a deed from the wife to her husband, held as follows:

"[W]e take it as settled, that prior to the act of 1871-'2, incorporated in *The Code*, Secs. 1835, 1836, the wife could not by deed convey to her husband, the doctrine being, as laid down in Malone on Real Property, 600, that 'unless the wife convey under power to dispose of the same, her disabilities are a bar and on her death the land descends to her heirs,' and except as authorized by Secs. 1835 and 1836 of *The Code*, this is still the law. . . ." 96 N.C. at 89.

At the time of its enactment and at the time our Supreme Court examined its constitutionality, the statute requiring a privy exam conferred a right upon women which they had previously been denied—the right to enter into separation agreements. Thus, even though the examination requirement may have restricted the exercise of that right, the courts focused upon the new right conferred by the statute.

Spencer v. Spencer

The case which expressly addressed the issue of constitutionality,[1] *Butler v. Butler, supra,* only made the general statement that the statute was constitutional and then cited three cases which did not discuss the constitutionality of the statute. Also, we note that no question as to the statute's constitutionality was raised at trial in *Butler v. Butler, supra;* nor was the question discussed in the parties' briefs. Furthermore, since the decision in *Butler v. Butler, supra,* the United States Supreme Court has radically altered its position on the constitutionality of classifications based upon gender. Compare *In re Lockwood,* 154 U.S. 116, 14 S.Ct. 1082, 38 L.Ed. 929 (1894), where the Court held that women could be constitutionally denied admission to the bar solely on the basis of sex, with *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed. 2d 514 (1975), where the Court held a gender based classification of the Social Security Act unconstitutional even though, when enacted, it was intended to be benevolent toward women and even though it was based upon an empirically demonstrable difference.

The Constitution must be applied in the light of the facts of the case before the court. The great principles underlying our system of government cannot be sacrificed, but neither can a court ignore reality. We should feel no need to apologize when the great tides of human events demand that we reappraise and reapply our Constitution in the light of changed facts. The role of women in our society has changed drastically since 1915. At the time *Butler v. Butler, supra,* was decided, women could not vote. Today, two women are members of the Cabinet of the President of the United States; a woman is chairman of the majority political party of this State; and two women serve as members of the Cabinet of the Governor of this State. At the turn of the century, women could be denied admission to the bar on the basis of gender. Today the Chief Justice of North Carolina is a woman, as is the Chief Justice of the Supreme Court of the most populous state in the Union. At the turn of the century, women rarely left the home unescorted. Under the previous administration, a

---

1. Since the decision in *Butler v. Butler,* supra, the citizens of this State have twice voted to amend the State Constitution in order more specifically to provide for equality under the law, and, on one of those occasions, they specifically voted in favor of equality between the sexes. *See* Constitution of North Carolina, Art. I, sec. 19 (1970 Amendment), and Art. X, sec. 4 (1964 Amendment). The courts of this State have never ruled upon the constitutionality of the statute in light of the equal protection clause of Article I, Sec. 19 of the Constitution of North Carolina. It would appear, therefore, that the holding of the Supreme Court in *Butler v. Butler,* supra, would not be controlling in a decision as to whether G.S. 52-6, now repealed, was in violation of the Constitution of North Carolina when applied to a case arising after 1970.

woman served as the United States Ambassador to our closest ally, Great Britain. This changing role of women must be considered by courts as part of the facts of the case before it. Because of the rapid rate of change, there would be genuine distinctions in cases arising in 1915, 1960, and 1978.

In a day when women were denied education, excluded from virtually all legal and commercial matters, and sheltered in the home, we do not doubt that G.S. 52-6 could pass constitutional muster. *See Butler v. Butler, supra.* We are equally convinced, however, that the statute cannot do so any longer. *See Weinberger v. Wiesenfeld, supra; Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed. 2d 583 (1973); *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed. 2d 225 (1971). Whether the statute would be justifiable in a 1960 factual setting, the setting in which this case arises, is less clear. However, we do not believe that it is necessary to decide that question at this time.

If G.S. 52-6 is unconstitutional, as defendant has argued and as we believe the holding of this Court would be were the question presented,[2] what would be the appropriate remedy? Defendant contends that the right to privy exam is a valuable right and that we should, therefore, extend that right to him. We disagree. When first enacted, G.S. 52-6 (or, rather, its forerunner) conferred a right—the right to enter into a separation agreement. *See Archbell v. Archbell, supra.* The question is whether the requirement that women have a privy exam prior to entering a separation agreement is a permissible restriction. While in 1915 it was a permissible restriction, the privy exam itself is now and always has been a restriction on the exercise of a right—*not a right* in itself. This Court has previously held that freedom of contract is a valuable right. *See North Carolina Assoc. of Licensed Detectives v. Morgan, Attorney General,* 17 N.C. App. 701, 195 S.E. 2d 357 (1973). We do not believe that infringing upon the freedom of contract enjoyed by married males would be the proper means to remedy the alleged invidious discrimination of G.S. 52-6. The proper remedy, indeed, the *only* remedy, would be to strike the privy exam requirement from G.S. 52-6.

---

2. We note that G.S. 52-6 has been repealed effective 1 January 1978. The statute has been replaced by a new sex-neutral statute, G.S. 52-10. Also, over the years, the legislature has tried to limit the damage of G.S. 52-6 by passing curative statutes such as G.S. 52-8 as it stood at the time this suit was initiated. However, like Br'er Rabbit and the Tar Baby, the legislature found itself unable to turn the wretched creature loose. *See Boone v. Brown,* 11 N.C. App. 355, 181 S.E. 2d 157 (1971).

If at some future time the question of the constitutionality of G.S. 52-6 is properly raised, and if it is found unconstitutional, the natural and logical result would certainly be the elimination of the privy exam requirement. A woman in the defendant's situation would no longer be allowed to defend on the basis that the separation agreement was void.

[1] Our courts, both state and federal, have long held that they were prohibited from issuing advisory opinions to private litigants and that, therefore, litigants who do not have a personal and concrete stake in the outcome of a case do not have standing to litigate. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed. 2d 536 (1973); *Lutz Industries, Inc. v. Dixie Home Stores*, 242 N.C. 332, 88 S.E. 2d 333 (1955). Defendant has urged this Court to hold G.S. 52-6 unconstitutional. If we were to do so, the result would be to eliminate the privy examination altogether; not to require married males also to undergo a privy exam. Such a holding would have absolutely no effect on defendant. He does not have a personal and concrete stake in this issue since its resolution in favor of invalidity would not affect his interest in the case. Defendant, therefore, has no standing to raise the issue of the constitutionality of G.S. 52-6 in this Court.

We reiterate our holding on this issue for the sake of clarity. We hold only that defendant has no standing to raise the issue of the constitutionality of G.S. 52-6. Our discussion of its constitutionality serves only to clarify our holding that defendant lacks standing to raise the issue.

Additionally, on the question of defendant's standing to attack the validity of the requirement of a privy examination of the wife, it is to be noted that the court concluded that "because of defendant's degree of education, experience, and sophistication and his excellent legal representation, the court concludes that he would not have benefited in any way from a private examination if one had been available to him." The court also concluded "that defendant did not suffer any disadvantage or detriment in this case on account of plaintiff's being privately examined." To the latter conclusion, defendant did not except. Although he did except to the former, he did not bring it forward and argue it in his brief. It appears from the record that the conclusions are supported by the findings of fact and the findings of fact are amply

supported by the evidence. Even if the questions of constitutionality were properly before us and we should uphold the validity of the statute made applicable to both sexes, defendant could show no injury.

[2] The second issue raised by this appeal is whether the trial court erred in disallowing, for the purpose of maintenance and support payments, adjustments to gross income due to losses on the rental of defendant's beach cottage. The trial court found that the cottage was advertised for rent; that defendant and his wife occupied the cottage three or four weeks a year; and that it remained unoccupied for a considerable period of time. The court concluded that "it cannot be concluded that the acquisition and maintenance of this rental property was an activity engaged in for profit. . . ." The court figured deductions in accordance with 26 U.S.C. § 183 and ordered increased payments.

While these findings might support the conclusion if, as in normal tax cases, the taxpayer had the burden of proof, the findings for the purposes of this case do not support the conclusion. First of all, we note that here plaintiff, not defendant (the taxpayer), has the burden of proof. Defendant has claimed deductions under 26 U.S.C. § 212 as "ordinary and necessary expenses paid or incurred . . . for the management, conservation, or maintenance of property held for the production of income. . . ." Apparently, the Internal Revenue Service has allowed the deductions. In order to prove her entitlement to an increased payment, plaintiff must show that the property was not held for the production of income.

If the trial court had found that the primary purpose in the ownership of the cottage was recreation, and there is evidence to support such a finding, it could have properly concluded that the activity was not engaged in for a profit. The findings as they are, however, do not support the conclusion that "it cannot be concluded that . . . this . . . was an activity engaged in for a profit. . . ." The simple findings of part-time personal use and periods of vacancy do not support the conclusion that defendant is entitled to deductions only under 26 U.S.C. § 183. That portion of the judgment dealing with the increase in payments must, therefore, be vacated, and the case remanded to the trial court for further findings in this regard.

Counsel for the parties have furnished us with very well-written briefs evidencing exhaustive research. We are appreciative of their efforts. We feel compelled, however, to point out to defendant's able counsel that the efficacy of an otherwise excellent brief is greatly diminished by reason of failure to refer to either exceptions or assignments of error. This is a glaring violation of Rule 28(b)(3), North Carolina Rules of Appellate Procedure, and, but for the gravity of the question raised, would require dismissal of the appeal.

The judgment of the trial court in denying defendant's motions to dismiss and in holding defendant liable under the separation agreement is affirmed for the reasons set out previously. The judgment of the trial court, insofar as it reflects an increase in the payments due as a result of disallowing certain deductions related to the rental of the beach cottage, is vacated, and the case is remanded for further findings of fact.

Affirmed in part; vacated in part; and remanded.

Judges HEDRICK and WEBB concur.