ARLENE R. HARRIS v. HAROLD R. HARRIS

No. 8012DC510

(Filed 20 January 1981)

1. Trial § 42.2— question by jury — insufficiency to show quotient verdict

In an action to enforce an agreement to pay alimony, the jury's question as to whether a finding that defendant did not have sufficient mental capacity to enter into the agreement would "completely throw out the contract, or can they draw up a new contract" did not show that the jury's verdict awarding plaintiff only $1.00 for defendant's breach of the agreement was a compromise or quotient verdict.

2. Trial § 46— impeaching verdict — affidavit of juror

A juror's affidavit was incompetent to impeach the jury's verdict after the jury had been discharged.

3. Trial § 42.2— quotient verdict — insufficient showing

A jury's verdict finding that defendant breached an agreement for payment of alimony but awarding plaintiff only $1.00 for such breach did not itself show that it was reached as the result of a quotient or compromise where defendant asserted a

Harris v. Harris

set-off to the amount of alimony he owed under the agreement and the verdict indicates that the jury believed and applied defendant's evidence of a set-off.

**4. Divorce and Alimony § 21; Husband and Wife § 13— specific performance of separation agreement**

The fact that plaintiff allowed an adult boyfriend to live with her in her house with a minor child did not constitute a breach of her separation agreement with defendant which would prohibit the court from ordering specific performance of the agreement, and the court did not err in entering specific performance of the alimony provisions of the agreement where it found that defendant had made no alimony payments for some time and had given no indication that he intended voluntarily to make such payments in the future.

**5. Husband and Wife § 10— consideration for separation agreement**

Plaintiff wife furnished adequate legal consideration for defendant's promise in a separation agreement to pay alimony in a sum equivalent to 50% of his retirement pay each month where she covenanted to waive and relinquish all of her marital rights to share in the property or the estate of defendant and released all claims for support, maintenance and alimony except as specifically provided for in the agreement. Furthermore, the agreement was under seal and the seal imports consideration.

**6. Evidence § 13— testimony by attorney — no violation of attorney-client privilege**

Assuming that an attorney who prepared a separation agreement for plaintiff and defendant represented both parties, the attorney-client privilege was not violated by the attorney's testimony concerning her observation of defendant's physical condition or concerning matters discussed with defendant while plaintiff was present.

**7. Husband and Wife § 10; Constitutional Law § 4— constitutionality of privy examination statute — husband's lack of standing to raise**

Defendant husband had no standing to attack the constitutionality of the statute requiring a privy examination of the wife for a separation agreement, former G.S. 52-6, since the only proper remedy upon a finding of unconstitutionality would be to strike the privy examination requirement entirely, and such a holding would not benefit or affect defendant in any way since he still would not have been entitled to a privy examination; moreover, defendant was not unfairly prejudiced by the fact that his wife had a privy examination before entering into the separation agreement since he cannot show a specific, identifiable injury resulting therefrom.

**8. Husband and Wife § 10.1— separation agreement — validity of alimony provision**

A separation agreement was not manifestly unreasonable or unfair to defendant husband because it required him to pay to plaintiff wife one-half of his military retirement pay for life.

9. **Estoppel § 4.7; Husband and Wife § 10.1— estoppel to assert invalidity of separation agreement**

   The evidence was sufficient to present a jury question as to whether defendant husband was estopped from denying the validity of a separation agreement where defendant performed his obligations in the agreement by conveying a house to plaintiff wife and by making monthly payments of alimony for some 32 months, and where defendant accepted the benefits of the agreement, including the complete and final settlement of all marital and property rights with his wife, which enabled him to get a divorce and remarry without further complication.

APPEAL by defendant from *Cherry, Judge.* Judgment entered 16 November 1979 in District Court, CUMBERLAND County. Heard in the Court of Appeals 3 December 1980.

The court entered an order upon a verdict in plaintiff's favor directing defendant to perform the support provisions of a separation agreement.

Plaintiff and defendant were married in 1951 in Fort Worth, Texas. Three children were born of this marriage. During the early years of their marriage, plaintiff worked outside the home to pay the living expenses while defendant was a student at Virginia Polytech Institute. Defendant received a commission in the Army in 1952. After graduating from college in December 1953, defendant began a service of twenty-one years in the Army from which he retired in April 1974 with the rank of Lieutenant Colonel. The parties were subsequently divorced in June 1975, after twenty-four years of marriage.

The parties signed and sealed a separation agreement on 27 September 1974 in Cumberland County. At the time, they had been living separate and apart for seven months. In the agreement, plaintiff was given custody of the two minor children, and defendant promised to pay $200.00 per month for the support of each of them. Plaintiff kept the house with all its furnishings, but was required to make the remaining payments thereon. Paragraphs seven and eight of the agreement further provided the following:

> That the said Harold Richard Harris further agrees to pay to Arlene Ruth Harris as support for herself a sum equivalent to fifty percent (50%) of his United States Army retirement pay each month for his lifetime; and that as a part of her alimony and support, the said Arlene Ruth Harris is to receive the following additional property:

(1) The use and possession of the 1970 Toyota Custom
    Station Wagon on condition that Harold Richard
    Harris will transfer title to her at any time that
    she requests that he do so.
(2) The coin collection.
(3) All cash presently deposited in any regular bank
    account.
(4) The possession and use of the travel trailer with
    the condition that she will loan it to Harold
    Richard Harris upon any reasonable request by
    him.

It is further covenanted and agreed that the said
Harold Richard Harris is to have the following property:

(1) All the silver bullion owned by the parties hereto.
(2) Seven Thousand Dollars ($7,000.00) in United
    States Certificates of Deposit in his name.
(3) The 1970 Chevrolet Pickup.
(4) The 1963 Buick Automobile.

Plaintiff filed a complaint against defendant on 12 May 1977 seeking damages for alleged arrearages in alimony, garnishment of defendant's military pay for alimony, specific performance of the separation agreement, attorney's fees and court costs. A default judgment was later entered in plaintiff's favor, but was vacated on 11 August 1977 upon defendant's motion and showing that he had obtained an extension of time to answer the complaint. Plaintiff's prayer for garnishment was later dismissed upon the motion of the United States as defendant garnishee. This dismissal was affirmed by the Court of Appeals in civil case No. 7812DC295 on 14 March 1978.

The action was tried by a jury on the issues of defendant's mental capacity to enter into a contract on 27 September 1974 when he signed the agreement, whether he had breached the contract to pay alimony, and the amount of damages owed to plaintiff if any. Defendant's evidence was that he lacked mental capacity to enter the contract because he was taking strong medication for stomach cramps and that he did not understand what he was doing because he did not have legal counsel. Plaintiff presented evidence tending to show that defendant did have sufficient mental capacity to enter into a valid, binding agreement and that both parties were represented by the same counsel, Elizabeth Fox. As to the question of alleged arrearages owed by defendant in alimony, it was stipulated that between 27

September 1974 and 12 May 1977, defendant received $36,526.00 in retirement income, and plaintiff was entitled to $18,263.00 of that amount by the separation agreement. Defendant had only paid plaintiff $15,289.00 and was $2,974.00 in arrears. The jury returned a verdict in plaintiff's favor, but awarded her only $1.00 in damages for defendant's breaches between June 1977 and November 1979.

*William J. Townsend, for plaintiff appellee.*

*Barringer, Allen and Pinnix, by Thomas L. Barringer, for defendant appellant.*

VAUGHN, Judge.

This case arises from a complaint seeking enforcement of the contractual provisions of a separation agreement executed by the parties over six years ago. Defendant's main defense to the action was that he lacked the requisite mental capacity to enter such an agreement. The jury returned a verdict in plaintiff's favor, and the judge ordered specific performance of the agreement. Defendant, nevertheless, brings forward many assignments of error which he contends require a new trial or reversal of the judgment. We disagree and deny defendant's request for relief.

Defendant first attempts to impeach the jury verdict which was rendered as follows:

> 1. Did the defendant, Harold R. Harris, have sufficient mental capacity on September 27, 1974, to enter into contract?
> Yes —X— No ——
> 2. Is the contract enforceable despite the mental incapacity of Harold R. Harris?
> Yes —— No ——
> 3. Did the defendant, Harold R. Harris, breach the contract for the payment of alimony, as alleged?
> Yes —X— No ——
> 4. What amount of damages, if any, has the plaintiff sustained?
> $ One Dollar ($1.00)

Specifically, defendant contends that the jury's answer to issue number 3 is inconsistent with its answer to issue number 4 which raises a suspicion that the jury improperly returned a quotient or compromise verdict. Defendant's contention is based on a question

asked by the jury during its deliberations and an affidavit of the jury foremen.

**[1]**    Less than an hour after it had retired for deliberation, the jury returned to the courtroom to ask the following question: "We don't know about this — they seem to think — they seem to think that if we can say no to this first question, would it completely throw out the contract, or can they draw up a new contract, or—." The judge did not answer this question because, as he told the jury, it "presupposed certain things which you should not consider, and which are not proper for you to consider in your deliberations." This exchange is insufficient to show that the subsequent decision reached by the jury was the result of a compromise or quotient verdict. It merely discloses that the jury was improperly concerned about the legal consequences of a particular finding they might make upon the facts, a concern which the trial judge promptly and correctly rebuked.

**[2]**    Over two months later, the jury foreman revealed the following in a sworn affidavit.

> After deliberating initially we were deadlocked with eight (8) Jurors voting to answer Issue Number One "Yes" and four (4) Jurors voting to answer Issue Number One "No."
>
> . . .
>
> We were only able to break our deadlock by proceeding to Issue Number Four and voting unanimously to answer it "One Dollar ($1.00)." We then returned to Issue Number One and the four Jurors who had been voting to answer that issue "No" changed their votes to answer it "Yes."

A rule of long standing and sound judgment in this State prohibits the court's receipt and consideration of a juror's affidavit, after the jury has been discharged, for the purpose of impeaching or overthrowing its verdict. *State v. Cherry,* 298 N.C. 86, 257 S.E. 2d 551 (1979); *Selph v. Selph,* 267 N.C. 635, 148 S.E. 2d 574 (1966); 1 Stansbury, N.C. Evidence § 65 (Brandis rev. 1973). The foreman's affidavit is, therefore, totally incompetent, and we shall disregard it.

**[3]**    The issue thus becomes whether the verdict itself, as it stands, reveals that it was reached as the result of a quotient or compromise. A quotient verdict is one in which the jurors, in a civil action, agree to award an amount of damages equal to one-twelfth of the sum of their

individual estimates of the measure of damages. *Highway Commission v. Matthis,* 2 N.C. App. 233, 163 S.E. 2d 35 (1968). A mere surmise by defendant that the verdict was reached by this process is insufficient to compel such a conclusion as a matter of law. *Collins v. Highway Com.,* 240 N.C. 627, 83 S.E. 2d 552 (1954). In *Highway Commission v. Matthis, supra,* the Court held, in accordance with the prevailing view, that evidence of papers and figures found in the jury room is insufficient to raise the presumption that the quotient process has been improperly used. In *Matthis,* the attorney found paper with twelve figures written down on it and divided by twelve which was equivalent to the exact amount of the verdict rendered. 2 N.C. App. at 250, 163 S.E. 2d at 46. Here, there is no evidence that the jury engaged in mathematical chicanery by quotient in its award of damages in the amount of $1.00.

A compromise verdict is one in which the jury answers the issues without regard to the pleadings, evidence, contentions of the parties or instructions of the court. *Vandiford v. Vandiford,* 215 N.C. 461, 2 S.E. 2d 364 (1939). Defendant relies on *Robertson v. Stanley,* 285 N.C. 561, 206 S.E. 2d 190 (1974) to impugn, the validity of the verdict. *Robertson* was a negligence action in which the jury answered the liability issues of negligence and contributory negligence in plaintiff's favor but failed to award him damages for pain and suffering. The Supreme Court reversed and remanded for a new trial because of its "strong suspicion that the jury awarded no damages to the minor plaintiff as a result of a compromise on the first and second issues involving the question of liability." 285 N.C. at 569, 206 S.E. 2d at 196. *Robertson* is inapplicable to the instant case.

Superficially, the jury's verdict may seem inconsistent in its award of only $1.00 for defendant's breach of the contract to pay alimony. Such an alleged inconsistency quickly disappears, however, upon a closer examination of the evidence presented by the parties and their contentions. Plaintiff's evidence was that defendant owed $2,974.00 in arrearages due to his breaches of the contract between June 1977 and November 1979. Defendant asserted a set-off of at least $2,000.00 to the amount of alimony he owed because he had paid child support to plaintiff in excess of that required by the agreement and had continued to pay support for a child after he had reached the age of majority. Viewed in this light, the jury verdict does not disclose a compromise but merely indicates that the jury believed (and applied) defendant's evidence of a set-off. *See also McAdams v. Moser,* 40 N.C.

App. 699, 253 S.E. 2d 496 (1979). Thus, the jury awarded only nominal damages as the judge had instructed them to do if they found no evidence of actual damages. We hold that the verdict exhibits the required degree of consistency to be enforced, and it was not error for the court to deny defendant's motion to set aside the judgment on this ground.

**[4]** Defendant next contends that the court erred as a matter of law when it ordered specific performance of the separation agreement. A separation agreement that has not been incorporated into a divorce judgment may be equitably enforced by an order of specific performance. *Moore v. Moore,* 297 N.C. 14, 252 S.E. 2d 735 (1979); *Haynes v. Haynes,* 45 N.C. App. 376, 383, 263 S.E. 2d 783, 787 (1980); 2 Lee, N.C. Family Law § 201 (4th ed. 1980). Defendant, nonetheless, states that specific performance in any case may only be awarded if the party seeking it has alleged and proven that he (or she) has also performed his obligations under the contract. *Whalehead Properties v. Coastland Corp.,* 299 N.C. 270, 283, 261 S.E. 2d 899, 907 (1980). It is unclear whether this requirement exists in the context of marital agreements. In *Moore, supra,* the Court did not mention whether the wife had performed her obligations and apparently proceeded solely on proof of the separation agreement itself. Nevertheless, it seems obvious that if the wife had materially breached her obligations thereunder, the husband would have strongly contended so, and the Court would have addressed the point. *See Wheeler v. Wheeler,* 299 N.C. 633, 263 S.E. 2d 763 (1980). In the instant case, however, we believe that plaintiff sufficiently alleged the performance of her obligations in paragraph thirteen of the complaint. She states there that defendant's failure to comply with the separation agreement "was not brought on or caused by any provocation" on her part. Moreover, we reject defendant's argument that plaintiff breached the agreement by allowing an adult male boyfriend to live with her in the house with a minor child. The agreement specifically provides that:

> It shall be lawful for, and the said Harold Richard Harris and Arlene Ruth Harris shall at all times hereafter continue to live separate and apart from each other, each free from the marital control and authority of the other, to the same extent as though each were sole and unmarried; each of the said parties shall have the right to reside at such place or places and with such person or persons as he or she may desire or deem fit . . . and in general, to live as though

the parties hereto had never been married.

As a matter of law, there is nothing in the agreement to prohibit the conduct defendant complains of, and defendant presents no other evidence of a possible breach by plaintiff sufficient to bar an order of specific performance in her favor. We also hold that the court did not err in its exclusion of evidence and refusal to submit an issue to the jury concerning plaintiff's relationship with another man after her divorce from defendant.

The court did not abuse its discretion in ordering specific performance in this case. The policy of this equitable remedy is to provide relief where the legal remedy is inadequate. *See Note, Enforcement of Contractual Separation Agreements by Specific Performance,* 16 Wake F. L. Rev. 117, 129-30 (1980). In *Moore v. Moore,* the Supreme Court explained the inadequacy of the legal remedy for a breach of a separation agreement.

> The plaintiff must wait until payments have become due and the obligor has failed to comply. Plaintiff must then file suit for the amount of accrued arrearage, reduce her claim to judgment, and, if the defendant fails to satisfy it, secure satisfaction by execution. As is so often the case, when the defendant persists in his refusal to comply, the plaintiff must resort to this remedy repeatedly to secure her rights under the agreement as the payments become due and the defendant fails to comply. The expense and delay involved in this remedy at law is evident. The nature of the contract, *i.e.,* providing for the plaintiff's basic subsistence, is such that the remedy available at law involves unusual and extreme hardship.

297 N.C. at 17, 252 S.E. 2d at 738. Here, the judge specifically found the following:

> That the defendant has made no alimony payment since June 1977, and has given no indication that he intends to voluntarily make payments in the future, that the future enforcement of the contract will, in all probability, be effected only by repeated and multiple actions at law, that the plaintiff has no adequate remedy at law, and that this is a proper case for a decree ordering specific performance.

Defendant did not except to this finding as required by Rule 10(b)(1) of the Rules of Appellate Procedure. This finding supports the judgment and order for specific performance. Moreover, it directly corresponds with the Court's conclusion in *Moore* that this type of enforcement was proper because "[t]he defendant has made no payments since 15 July 1975. There is nothing in the record which would indicate that he intends to make payments due in the future." 297 N.C. at 18, 252 S.E. 2d at 739. Defendant's other assignments of error relating to the order of specific performance are without merit and are overruled.

[5]    The court excluded evidence and refused to submit an issue to the jury, pursuant to defendant's request, as to whether plaintiff had given full and fair consideration to the defendant to support his promise to pay her alimony. The court's action was entirely proper. Plaintiff covenanted to waive and relinquish all her rights, arising out of the marriage, to share in the property or estate of defendant, and she released all claims for support, maintenance and alimony except as specifically provided for in the agreement. *See 2 Lee, N.C. Family Law* § 187, at 463-64 (4th ed. 1980). Plaintiff undoubtedly furnished adequate legal consideration, through her forbearance of substantial legal rights, for defendant's promise to pay alimony in a sum equivalent to fifty percent of his retirement pay each month. *See Note, Enforcement of Contractual Separation Agreements by Specific Performance,* 16 Wake F. L. Rev. 117, 129 (1980). In addition, the separation agreement in this case is a sealed instrument. "A contract executed under seal imports consideration." *Oil Corp. v. Wolfe,* 297 N.C. 36, 39, 252 S.E. 2d 809, 811 (1979) [citing *Honey Properties, Inc. v. Gastonia,* 252 N.C. 567, 114 S.E. 2d 344 (1960)]; *Savings & Loan Assoc. v. Cogdell,* 44 N.C. App. 511, 513, 261 S.E. 2d 259, 260 (1980).

[6]    The separation agreement in issue was prepared by Elizabeth Fox, an attorney in Fayetteville, North Carolina. On *voir dire* examination, Mrs. Fox testified as follows:

> I had been called up by Mrs. Harris and told that both she and her husband wanted me to represent them. On a separation agreement, if the parties, if there is no controversy, I talk to them and explain everything to both parties. I guess I was representing them both at the time.

The court then ruled that she could testify as a witness for plaintiff about what the parties said while they were both in her presence.

Specifically, her testimony showed that defendant had knowingly declined to get his own attorney, as he had been advised to do, because he knew Mrs. Fox and preferred her to handle it so no one else would be involved. The attorney testified that defendant did not appear to be in pain or have anything wrong with him, and his speech and pronunciation of words were normal on the two occasions he came to her office in September 1974. In their discussion of what the terms of the agreement should be, defendant told the attorney that "he felt that Arlene had earned half of [his] retirement pay." Finally, Mrs. Fox testified that she read the complete agreement to both parties, paragraph by paragraph, and explained every term therein before they signed it.

Defendant believes that the court's failure to exclude the attorney's testimony, *supra*, constituted a violation of the attorney-client privilege. At the outset, we note the glaring inconsistency between defendant's position on appeal and that at trial. At trial, defendant flatly denied that Mrs. Fox was his attorney:

> Where the separation agreement says, "whereas both parties hereto are represented by counsel," I was not represented by counsel. I did not consider Mrs. Fox to be my attorney. She was Arlene's attorney. I paid no fee to Mrs. Fox. Arlene paid her as I understand, or I heard, I don't know, but I'm fairly sure that she did.

Also, defendant's third defense in his answer and counterclaim was that he was not represented by counsel when he signed the agreement. Moreover, he repeatedly asserts his lack of legal representation (in the transaction) throughout his brief. The privilege only attaches to communications made during the existence of the relation of attorney and client. *State v. Van Landingham,* 283 N.C. 589, 197 S.E. 2d 539 (1973); *State v. Davenport,* 227 N.C. 475, 42 S.E. 2d 686 (1947). Here, defendant's own evidence tends to negate the existence of the required attorney-client relationship and supports the admission of Mrs. Fox's testimony.

Since Mrs. Fox believed that she represented both plaintiff and defendant, however, we shall further examine the nature of her testimony to determine whether it did, in fact, improperly infringe upon defendant's right to privileged communications with his attorney. At a minimum, it was clearly proper for the attorney to testify about her observation of defendant's physical condition. In *United States v.*

*Kendrick,* a case originating in North Carolina, the Fourth Circuit explained the inapplicability of the privilege to testimony of this nature.

> Communications made in confidence by a client to his attorney are protected by the attorney-client privilege. It is the substance of the communications which is protected, however, not the fact that there have been communications. Excluded from the privilege, also, are physical characteristics of the client, such as his complexion, his demeanor, his bearing, his sobriety and his dress. Such things are observable to anyone who talked with the client, and there is nothing, in the usual case, to suggest that the client intends his attorney's observations of such matters to be confidential. In short, the privilege protects only the client's confidences, not things which, at the time, are not intended to be held in the breast of the lawyer, even though the attorney-client relation provided the occasion for the lawyer's observation of them.

331 F. 2d 110, 113-14 (4th Cir. 1964); *Accord, State v. Tate,* 294 N.C. 189, 239 S.E. 2d 821 (1978).

Another requisite of the attorney-client privilege is that the communication must have been made in confidence. 1 Stansbury, N.C. Evidence § 62 (Brandis rev. 1973). Communications made to any attorney in the presence of a third person, who is not the agent of either party, are not confidential and are, therefore, outside the scope of the privilege. *State v. Van Landingham,* 283 N.C. at 602, 197 S.E. 2d at 547. Here, the attorney's testimony was limited to matters discussed with defendant while plaintiff was present. Plaintiff was not the agent of either defendant or the attorney. Moreover, the general rule is that "where two or more persons employ the same attorney to act for them in some business transaction, their communications to him are not ordinarily privileged *inter sese." Dobias v. White,* 240 N.C. 680, 685, 83 S.E. 2d 785, 788 (1954). We, therefore, hold that the testimony of attorney Fox was properly admitted. *Brown v. Green,* 3 N.C. App. 506, 165 S.E. 2d 534 (1969) (attorney could testify as to his preparation of a deed of trust for plaintiff and defendant's intestate where the evidence showed he was acting as the attorney of both parties).

**[7]**  Plaintiff was privately examined by a proper certifying officer

---

**Harris v. Harris**

---

after she signed the separation agreement in accordance with the requirements of G.S. 52-6 (repealed 1977). Defendant contends that he was denied his constitutional right to equal protection because he did not also receive a privy examination before the agreement was enforceable against him. An identical argument was made in *Spencer v. Spencer,* 37 N.C. App. 481, 246 S.E. 2d 805, *appeal dismissed,* 296 N.C. 106 (1978), *cert. denied,* 441 U.S. 958, 99 S. Ct. 2400 (1979). In *Spencer,* Judge Morris (now Chief Judge) analyzed the history and purpose of G.S. 52-6 and concluded that:

> [w]hen first enacted, G.S. 52-6 (or, rather, its forerunner) conferred a right - the right to enter into a separation agreement . . . . The question is whether the requirement that women have a privy exam prior to entering a separation agreement is a permissible restriction. While in 1915 it was a permissible restriction, the privy exam itself is now and always has been a restriction on the exercise of a right -*not a right* in itself. This Court has previously held that freedom of contract is a valuable right. *See North Carolina Assoc. of Licensed Detectives v. Morgan, Attorney General,* 17 N.C. App. 701, 195 S.E. 2d 357 (1973). We do not believe that infringing upon the freedom of contract enjoyed by married males would be the proper means to remedy the alleged invidious discrimination of G.S. 52-6. The proper remedy, indeed, the *only* remedy, would be to strike the privy exam requirement from G.S. 52-6.

37 N.C. App. at 488, 246 S.E. 2d at 810 (citations omitted). The Court proceeded to reject defendant's challenge to G.S. 52-6 because he did not have standing to raise the constitutional issue. The Court stated that he could not demonstrate a personal and concrete stake in the outcome when the only proper remedy upon a finding of unconstitutionality would be to strike the privy exam requirement entirely. In *Spencer,* the Court, therefore, believed that even if it were to hold G.S. 52-6 to be unconstitutional, such a holding would not benefit or affect defendant in any way since he still would not have been entitled to a privy exam. 37 N.C. App. at 488-89, 246 S.E. 2d at 811; 57 N.C. L. Rev. 960, 961 (1979). For the reasons given in *Spencer,* we hold that defendant cannot successfully attack G.S. 52-6 here because he lacks the requisite standing to litigate its constitutionality.

In addition, we also conclude as the Court did in *Spencer, supra,*

that defendant was not unfairly prejudiced by the fact that his wife had a privy exam because he cannot show a specific, identifiable injury resulting therefrom. The separation agreement, on its face, appears to be a fair and equitable settlement of the marital and property rights of a couple married for twenty-four years. Moreover, defendant is a retired Lieutenant Colonel in the United States Army, and it is not unreasonable to assume that he generally possessed sufficient intelligence and knowledge to be able to understand the legal significance of the covenants he made in the separation agreement. It is true that he testified at trial that he lacked mental capacity to comprehend what he was doing at that time because he was under strong medication for serious health problems in the nature of a spastic stomach and colon. A next door neighbor corroborated his testimony. Nevertheless, the jury, as it was free to do, did not believe defendant and decided that he had sufficient mental capacity to enter into the separation agreement on 27 September 1974. Thus, even if the statute should be made applicable to both sexes, it would be an extremely speculative conclusion on our part, in light of the jury verdict already rendered, that defendant would have rejected the agreement if he had been privately examined about it. *See Spencer,* 37 N.C. App. at 489-90, 246 S.E. 2d at 811. For the reasons discussed, we reject defendant's assignments of error relating to the constitutionality of repealed G.S. 52-6.

**[8,9]** On oral argument, defendant contended that the court erred in ordering him to perform the alimony provisions of the agreement because the amount of alimony, one-half of his retirement pay for life, was clearly too excessive. We disagree. We cannot say, as a matter of law, that the parties' agreement to his amount was manifestly unreasonable or unfair to defendant. After twenty-four years of an Army marriage, the most substantial property this couple owned consisted of their vested rights to defendant's military retirement income. It was entirely proper for them to decide between themselves to divide this equally when they separated. Also, we do not know of all the circumstances leading up to the separation or how badly and quickly defendant wished to get out of the marriage. Moreover, we note that plaintiff correctly argues that the jury should have been given an appropriate instruction concerning defendant's estoppel to deny or repudiate the contract. Even if the jury had believed that defendant lacked the mental capacity to enter the contract on 27 September 1974, it still would have had to answer the further question of whether defendant had subsequently ratified and affirmed the contract by

accepting its benefits. *Walker v. McLaurin,* 227 N.C. 53, 40 S.E. 2d 455 (1946). There was overwhelming evidence to take that issue to the jury. Defendant performed his obligations in the agreement by conveying the house to plaintiff in February 1975 and making regular monthly payments of alimony, in the agreed amounts, for twenty-five months. In October 1976 (after the divorce), however, defendant began a consistent pattern of reducing the amount of the alimony payments until he eventually stopped making them altogether in May 1977. Defendant tried to avoid his duty to pay as he had agreed to do even though he had accepted the benefits of the contract. Those benefits included the complete and final settlement of all marital rights and property with his wife, which enabled him to get a divorce and remarry without further complication. The divorce, of course, terminated all of plaintiff's rights arising from the marriage except those specifically provided for in the deed of separation. Since defendant paid alimony for thirty-two months, it was reasonable for plaintiff to rely on his continued performance, and defendant should have been estopped from denying the validity of the contract.

Defendant's remaining assignments of error have no merit and are overruled.

No error.

Judges WELLS and HILL concur.