This suit for an accounting and payment of oil and gas production proceeds involves the application of a repealed coverture statute on title to land. Juanita Jopling Jennings, an alleged successor in interest of Minnie Pearl Orr Rainey, and the collateral heirs of Minnie Pearl Orr Rainey sued Wessely Energy Corporation and others. Jennings and the collateral heirs claimed that Minnie Pearl failed to comply with the now-repealed coverture statute, and thus her interest in certain real estate passed to them. The trial court granted summary judgment for Wessely Energy. The court of appeals reversed and remanded. 720 S.W.2d 811. We reverse the judgment of the court of appeals.
When J.B. Orr died intestate owning 203.7 acres located in Upshur County, Texas, the property passed to his ten children in undivided interests. In 1954, one of J.B.'s sons, B.B. Orr, purchased by two deeds the undivided interest of his brothers and sisters in the property. The first deed, dated 27 August 1954, granted "all of our undivided interests" to B.B. Orr and was signed by Ida Orr Newsome, a widow, O.G. *Page 626 
Orr, D.L. Orr, J.H. Orr, W.W. Orr, H.S. Orr, and Fannie Orr Ellison, joined by her husband Drew Ellison. Minnie Pearl Orr Rainey, a married sister, also joined in the August 27th conveyance although her husband, W.H. Rainey, did not join her. When Minnie Pearl purportedly granted her 1/10 interest, a married woman's conveyance was invalid if her husband did not join in the conveyance. TEX.REV.CIV.STAT.ANN. art. 1299 (repealed 1963). A second deed, dated September 18, 1954, conveyed the interest of Mrs. R.D. Orr and her children. Mrs. R.D. Orr was the surviving widow of B.B. Orr's deceased brother, R.D.
Although the exact date is not in the record, it is undisputed Minnie Pearl later died intestate. Under the laws of intestacy, 1/2 of her 1/10 interest in the property passed to her husband, W.H., and 1/2 passed to her collateral heirs who are the descendants of her siblings. In 1965, W.H. Rainey deeded his 1/20 interest to Juanita Jennings.
Beverly Ann Orr Havner, independent executrix of the estate of B.B. Orr, deceased, succeeded to the interest held by B.B. Orr. In 1979, Mrs. Havner granted an oil and gas lease to Wessely Energy which purportedly covered the entire 203.7 acre tract. Wessely Energy completed a gas well on the property in 1981. Later that same year, Jennings and the collateral heirs sued Mrs. Havner and Wessely Energy for their share of well production proceeds attributable to their alleged 1/10 undivided interest in the property.
The trial court rendered summary judgment to Wessely Energy. The trial court ruled that former article 1299 was unconstitutional, and therefore neither Jennings nor the collateral heirs held any interest in the tract since they claimed their interest through Minnie Pearl's failure to comply with the repealed statute. The court further determined that the two deeds issued by B.B. Orr's siblings were general warranty deeds, and as such, the collateral heirs were estopped from asserting any ownership in the land.
In reversing the trial court's judgment and remanding the cause, the court of appeals determined that although former article 1299 would be unconstitutional today, the statute was binding and valid in 1954 when Minnie Pearl attempted to deed her interest to her brother, B.B. Orr. The court held the unconstitutionality of former article 1299 under current constitutional standards does not render the statute void ab initio. Thus, Minnie Pearl's deed to B.B. did not pass title since W.H. did not join in the conveyance. The court of appeals further reasoned that since the deed conveyed undivided interests only, the doctrine of estoppel by deed and the related doctrine of after-acquired title did not apply to Minnie Pearl's collateral heirs.
On appeal here, Wessely Energy contends Jennings' reliance on former article 1299 violates Article I, sections 3 and 3a of the Texas Constitution and the Fourteenth Amendment to the United States Constitution. Jennings responds that the law at the time of Minnie Pearl's attempted conveyance governs the deed, and former article 1299 was not unconstitutional in 1954.
The coverture statute in issue provided:
 The husband and wife shall join in the conveyance of real estate, the separate property of the wife; and no coveyance shall take effect until the same shall have been acknowledged by her privily and apart from her husband. . . .
TEX.REV.CIV.STAT.ANN. art. 1299 (repealed 1963). The laws existing at the time a contract is made becomes a part of the contract and governs the transaction. Langever v.Miller, 124 Tex. 80, 76 S.W.2d 1025, 1026-27 (1934). Thus, in 1954, former article 1299 became a part of Minnie Pearl's deed. However, recognizing that article 1299 is a part of Minnie Pearl's deed does not resolve the issue of whether article 1299 was constitutional or unconstitutional in 1954.
Wessely Energy contends Kirchberg v. Feenstra,450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981) requires a court to apply current constitutional analysis when reviewing a challenge to a statute. In Kirchberg, the Supreme Court held a then-repealed Louisiana statute unconstitutional *Page 627 
which granted a husband the unilateral right to dispose of community property without his wife's consent. The transaction giving rise to Mrs. Feenstra's challenge of the statute occurred in 1974 when Mr. Feenstra mortgaged the Feenstra home without Mrs. Feenstra's consent. While Mrs. Feenstra's suit against the mortgage holder (Kirchberg) was on appeal to the Supreme Court, the Louisiana legislature repealed the challenged statute. The Supreme Court reviewed the statute under current constitutional analysis and affirmed the fifth circuit's ruling of unconstitutionality to the 1974 mortgage. Wessely Energy reads Kirchberg as requiring that constitutionality be judged under standards existing at the time of the challenge. Conversely, Jennings contendsKirchberg is distinguishable. The statute which Mr. Feenstra relied upon to unilaterally mortgage the Feenstra home in 1974 was unconstitutional under constitutional analysis existing at that time. Cf. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).
The statute here had not been declared either constitutional or unconstitutional at the time of Minnie Pearl's conveyance nor has any court subsequently adjudicated the constitutionality of the statute. Although our courts have applied former article 1299 after its repeal to resolve title disputes arising under the statute, the constitutionality of the statute was not challenged. See Coakley v.Reising, 436 S.W.2d 315, 318-19 (Tex. 1969); Little v.Linder, 651 S.W.2d 895, 900 (Tex.App. — Austin 1983, writ ref'd n.r.e.); Click v. Seale, 519 S.W.2d 913, 918-920 (Tex.Civ.App. — Austin 1975, writ ref'd n.r.e.). Thus, the constitutionality of article 1299 is an issue of first impression.[1]
To support the argument that article 1299 was not unconstitutional in 1954, Jennings contends that the authority Wessely Energy now urges to declare the statute unconstitutional was not available then. The Texas Equal Rights Amendment was not passed until 1972. The Texas Constitution prohibits the enactment of a retroactive law or any law impairing the obligation of contracts. TEX. CONST. art. I, Sec. 16. This prohibition includes constitutional amendments as well as legislative enactments.Langever, 76 S.W.2d at 1027. Additionally, the Equal Protection Clause of the Fourteenth Amendment was not extended to gender-based discrimination until 1971. See Reed,404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225. Although this equal protection analysis was not yet recognized in 1954, we think the wiser course mandates review under standards as we understand them today. When a court is required to decide issues of constitutionality, such issues are resolved under the governing law at that time, although operative facts may predate the recognition of the relied-upon constitutional principal. Reed v. Campbell, 476 U.S. 852, ___, 106 S.Ct. 2234, 2237-38, 90 L.Ed.2d 858, 863 (1986). By limiting our review to current constitutional analysis, we can resolve constitutional issues without speculating as to the application of constitutional principles or basing a decision of grave importance on conjecture.
There is no question that former article 1299 is unconstitutional. The statute violates the Equal Protection Clause of the Fourteenth Amendment. By requiring a wife to obtain her husband's joinder before conveying real estate embodies the gender-based discrimination found unconstitutional absent a showing that the classification is tailored to further an important governmental interest. Kirchberg, 450 U.S. at 459-60, 101 S.Ct. at 1198; Stanton v.Stanton, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975). The statute also violates Article I, section 3 of the Texas Constitution which was adopted to prevent the singling out of any person or class of persons as a special subject for discriminating legislation. See Burroughs v. Lyles, *Page 628 142 Tex. 704,181 S.W.2d 570, 574 (1944). Furthermore, the statute's repeal did not moot the constitutional issue; Jennings and the other respondents are relying on this former statute today in order to invalidate Minnie's conveyance of 33 years ago.
We next address Wessely Energy's and Jennings' arguments concerning the application of our holding of unconstitutionality to this dispute. Wessely Energy insists the ruling must be applied here, and failure to apply would result in an impermissible advisory opinion. Wessely Energy further contends our holding should be applied here because a refusal would eliminate a litigant's incentive to bring actions designed to refine and modernize our laws and constitution. Jennings contends that we need not apply our decision of unconstitutionality here, and to do so would deprive her of vested rights.
One who establishes new constitutional precepts and rulings usually enjoys the benefits of the ruling. See, e.g., Inre McLean, 725 S.W.2d 696 (Tex. 1987). The United States Supreme Court, in recognizing that a party who establishes constitutional doctrine should gain the benefit of the decision, stated:
 [t]hat [the party] must be given that benefit is, . . . an unavoidable consequence of the necessity that constitutional adjudications not stand as mere dictum. Sound policies of decision making, rooted in the command of Article III of the Constitution that we resolve issues solely in concrete cases or controversies, and in the possible effect upon the incentive of counsel to advance contentions requiring a change in the law, mitigate against denying [these parties] the benefit of today's decision. (footnotes omitted).
Stovall v. Denno, 388 U.S. 293, 301, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). Like the United States Constitution, the Texas Constitution is interpreted to prohibit the rendering of advisory opinions. Firemen's InsuranceCo. v. Burch, 442 S.W.2d 331, 333 (Tex. 1969). To declare former article 1299 unconstitutional and then not apply the holding here would transform our pronouncement into mere advice. Furthermore, a court's decision invariably involves application to facts and transactions which predate the decision. No one acquires a vested right in violation of the constitution. See Kirchberg, 450 U.S. at 462-63, 101 S.Ct. at 1199-1200. Jennings contends, though, that a court does not always apply its ruling to the parties before the court. See England v. Louisiana State Board of MedicalExaminers, 375 U.S. 411, 422, 84 S.Ct. 461, 468, 11 L.Ed.2d 440 (1964). In England, the Supreme Court clarified procedural guidelines for preserving federal constitutional claims litigated in state court, and refused to apply its ruling to bar England's claims. England,
however, did not involve the pronouncement on the constitutionality of a statute; therefore, it is not controlling, nor is it persuasive on this issue.
We recognize that Mrs. Jennings instituted this suit because of Wessely Energy's failure to recognize Minnie Pearl's non-compliance with former article 1299, which until today, granted Jennings an interest in the tract, and therefore, ownership of the minerals. Further, we are mindful of the necessity that property rights must remain stable and free from changing doctrine. Averyt v. Grande, Inc., 717 S.W.2d 891, 895 (Tex. 1986). Whatever unfairness visited upon Mrs. Jennings cannot lessen or diminish the unconstitutionality of former article 1299 or its application to this case.
Finally, we address what effect will be given our holding that former article 1299 is unconstitutional. To determine whether, and to what extent, a judicially modified rule will apply retroactively, a court should determine (1) whether the holding decided an issue of first impression not clearly foreshadowed by prior decisions; (2) whether retroactive operation will further or retard the holding in question; and (3) whether a retroactive application could produce substantial inequitable results. Segrest v. Segrest, 649 S.W.2d 610, 612 (Tex.), cert. denied, 464 U.S. 894, 104 S.Ct. 242, 78 L.Ed.2d 232 (1983) (citing Chevron v. Huson,404 U.S. 97, 105-08, 92 S.Ct. 349, 354-56, 30 L.Ed.2d 296 (1971)). *Page 629 
As previously noted, Texas courts have applied former article 1299 even after its repeal to settle property disputes arising under the statute. Clearly, until the statute was declared unconstitutional, such an application was required by the Texas Constitution. TEX. CONST. art. I, Sec. 16. While our ruling today rests upon established equal protection grounds, our holding was not clearly foreshadowed by prior decisions.
Moreover, retroactive operation could cloud land titles within the chain of a former article 1299 defect. InKirchberg, the fifth circuit applied its decision of unconstitutionality prospectively only "because a holding of retroactive invalidity [of the Louisiana statute] would create a substantial hardship with respect to property rights and obligations within the State of Louisiana." 609 F.2d 727, 735 (5th Cir. 1979), aff'd, 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981). Similarly, the Supreme Court recognized:
 The actual existence of a statute, prior to [a determination of unconstitutionality], is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects, — with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination.
Chicot County Drainage Dist. v. Baxter State Bank,308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1940). Established title to and ownership of land should be settled and stable. Our ruling is prospective. No other title taken under a former article 1299 defect is invalid by reason of this decision.
We hold TEX.REV.CIV.STAT.ANN. art. 1299 (repealed 1963) violates both the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, section 3 of the Texas Constitution. This holding applies in this case; Juanita Joplin Jennings and the other respondents may not base their cause of action for well production proceeds on former article 1299. Further, because we decide respondents cannot maintain an action based on former article 1299, it is unnecessary to review the estoppel by deed issues, and we express no opinion on the lower court decisions involving those issues.
Accordingly, we reverse the judgment of the court of appeals and render judgment for Wessely Energy.
[1] Jennings argues the legislature has already declared article 1299 unconstitutional by repealing it in 1963. We find no evidence from which to infer the statute was repealed for that reason; in fact, the legislature may have simply concluded the statute was unfair or unwise. When the intent behind a legislative action is unclear, we will not speculate as to the reason or reasons for the legislature's decision.