MOLLIE JACKSON DUNN AND HUSBAND, CECIL DUNN; DAISY JACKSON TROGDON AND HUSBAND, JAMES H. TROGDON, JR.; PATRICIA JACKSON DAVIS AND HUSBAND, WILLIAM R. DAVIS; FAIRLYN JACKSON MONTELLA AND HUSBAND, MICHAEL MONTELLA v. WILLARD J. PATE; BOBBIE LOU JACKSON GRIMES; FAIRLEY JAMES GRIMES AND WIFE, JENNIFER B. GRIMES; DAVID E. GRIMES, JR.; ELIZABETH GRIMES FISHER AND HUSBAND, WILSON DAVID FISHER; LABON CHARLES GRIMES AND WIFE, LIBBY GRIMES

No. 170PA92

(Filed 2 July 1993)

1. **Constitutional Law § 50 (NCI4th) — private examination statutes — constitutionality — standing to challenge**

    Defendants had standing to challenge the constitutionality of North Carolina's former private examination statutes where the operation of N.C.G.S. § 52-6 would invalidate a 1962 deed and directly deprive them of their bequests under a will. Although plaintiffs argue that defendants have no standing because they do not belong to the class prejudiced by the statute, the exception that allows an affected party to allege discrimination when no member of the class subject to the discrimination is in a position to do so applies here because both parties to the 1962 deed are now dead.

    **Am Jur 2d, Constitutional Law § 190.**

2. **Deeds § 25 (NCI4th) — 1962 deed — private examination statutes — constitutionality**

    North Carolina's former private examination statutes, N.C.G.S. § 52-6 and N.C.G.S. § 47-39, are unconstitutional and noncompliance with those statutes will not serve as a basis to invalidate the 1962 deed in this case. The fact that the deed was executed prior to the express incorporation of the Equal Protection Clause into the State Constitution does not mandate a finding that such discrimination was constitutional at the time the deed was executed. Since the private examination statutes required unequal application of the law while serving no clearly discernible important governmental interest, they were unconstitutional at the time the deed was executed and will not presently be enforced.

    **Am Jur 2d, Deeds §§ 116-119.**

    Justice PARKER did not participate in the consideration or decision of this case.

DUNN v. PATE

[334 N.C. 115 (1993)]

On appeal and discretionary review of the decision of the Court of Appeals, 106 N.C. App. 56, 415 S.E.2d 102 (1992), reversing an order granting summary judgment in favor of defendants entered by Herring, J., in the Superior Court, Cumberland County, on 31 December 1990. Heard in the Supreme Court 15 January 1993.

*McCoy, Weaver, Wiggins, Cleveland and Raper, by Richard M. Wiggins, for plaintiff-appellees.*

*Garris Neil Yarborough for defendant-appellees.*

FRYE, Justice.

This case presents the question of whether noncompliance with the private examination requirements set forth in N.C.G.S. § 52-12 (Supp. 1957) (superseded by N.C.G.S. § 52-6) (repealed 1977) and N.C.G.S. § 47-39 (Supp. 1957) (repealed 1977) in the execution of a deed in 1962 may be an effective basis for relief in an action to set aside that deed today. In light of the principle of equal protection under the law which makes gender-based discrimination presumptively unconstitutional, we hold that noncompliance with the statutes in question will not lead to the requested relief.

Plaintiffs instituted this action on 12 February 1989, seeking to have a 1962 deed to real property in Cumberland County set aside for failure to comply with the private examination requirements then in effect. The property in question was previously owned by Mary A. Jackson. On 22 October 1951, she conveyed title to the land to her son Fairley J. Jackson and his wife, Mary Elizabeth Jackson, as tenants by the entirety. In 1962 Fairley J. and Mary Elizabeth Jackson conveyed the property to Fairley J. Jackson individually. At that time the former N.C.G.S. § 52-12[1] [hereinafter referred to as N.C.G.S. § 52-6] and N.C.G.S. § 47-39[2] required that

---

1. The former N.C.G.S. § 52-12 provided in relevant part:

> (a) No contract between husband and wife made during their coverture shall be valid to affect or change any part of the real estate of the wife . . . unless such contract . . . is acknowledged before a certifying officer who shall make a private examination of the wife according to the re-quirements formerly prevailing for conveyance of land.

> (b) The certifying officer examining the wife shall incorporate in his certificate a statement of his conclusions and findings of fact as to whether or not said contract is unreasonable or injurious to the wife . . . .

2. N.C.G.S. § 47-39 outlined the form of the acknowledgement required by N.C.G.S. § 52-6 (the former N.C.G.S. § 52-12).

**DUNN v. PATE**

[334 N.C. 115 (1993)]

the deed contain a certification by the clerk of court that the conveyance was neither unreasonable nor injurious to the wife. The deed executed by the couple, otherwise regular in form, did not contain the required certification.

In 1976 Fairley J. Jackson died testate, devising the property in question to his wife (Mary Elizabeth) for life, with the remainder in equal shares to each of his living children and to his sister-in-law, Willard J. Pate. By codicil the share to his sister-in-law was devised to her for life, with the remainder in the children of Bobbie Lou Jackson Grimes (Fairley's grandchildren). Mary Elizabeth Jackson died intestate in 1980, leaving five living children from her marriage to Fairley J. Jackson as heirs. Four of Fairley and Mary Elizabeth's five children and their spouses are the plaintiffs in this action. Willard J. Pate, Bobbie Lou Jackson Grimes (Fairley and Mary Elizabeth's other child) and Bobbie Lou Jackson Grimes' children and spouses are the defendants in this action.

In the present action, plaintiffs challenge the 1962 deed as ineffective to convey the property to Fairley J. Jackson individually due to noncompliance with the private examination statutes and allege that title to the property continued in both Fairley J. and Mary Elizabeth Jackson as tenants by the entirety. They contend that upon Fairley's death the property passed to Mary Elizabeth Jackson individually by operation of law. In such case, the property descended upon Mary Elizabeth's death by virtue of her intestacy to the five children in five equal shares rather than passing in six shares as directed by Fairley's Will and Codicil. Defendants originally argued that failure to comply with the private examination statutes in effect in 1962 could not be a basis upon which the deed could be set aside since the legislature enacted curative statutes after the repeal of the examination statutes and since the examination statutes are unconstitutional. Both parties filed motions for summary judgment. The trial court granted defendants' motion. Plaintiffs appealed to the Court of Appeals which reversed on state substantive law grounds and remanded to the superior court. *Dunn v. Pate*, 98 N.C. App. 351, 390 S.E.2d 712 (1990).

On remand, defendants argued that the remaining issue for resolution was the constitutionality of N.C.G.S. § 52-6 and N.C.G.S. § 47-39 which had been raised and preserved throughout the litigation. Both parties again filed motions for summary judgment and again defendants' motion was granted. Plaintiffs appealed to the

Court of Appeals which reversed the trial court on the basis of *stare decisis*, noting that this Court held a former version of the statutes in question to be constitutional in *Butler v. Butler*, 169 N.C. 584, 86 S.E. 507 (1915), and had not as yet indicated a change in position. *Dunn v. Pate*, 106 N.C. App. 56, 59, 415 S.E.2d 102, 104 (1992). Defendants filed notice of appeal and a petition for discretionary review of the constitutional issue. Appeal was retained and the petition for discretionary review was allowed by this Court on 9 July 1992.

We observe initially that the Court of Appeals correctly stated the law of *stare decisis* in its decision below. As the Court of Appeals noted, it has "no authority to overrule decisions of [the] Supreme Court and [has] the responsibility to follow those decisions 'until otherwise ordered by the Supreme Court.' " *Dunn v. Pate*, 106 N.C. App. at 60, 415 S.E.2d at 104 (quoting *Cannon v. Miller*, 313 N.C. 324, 327 S.E.2d 888 (1985) ). However, we conclude that *Butler*, 169 N.C. 584, 86 S.E. 507, the decision relied upon by the Court of Appeals, does not control the question in this case. *See Spencer v. Spencer*, 37 N.C. App. 481, 487-88, 246 S.E.2d 805, 809 (Chief Judge Morris observed that drastic changes have occurred in society since 1915 when a woman could not vote, was denied educational opportunities, was excluded from most legal and commercial matters and was generally occupied in the home), *disc. rev. denied*, 296 N.C. 106, 249 S.E.2d 804 (1978), *cert. denied*, 441 U.S. 958, 60 L. Ed. 2d 1062 (1979).

The statutes in question, N.C.G.S. § 52-6 and N.C.G.S. § 47-39, were both repealed in 1977. After their repeal N.C.G.S. § 52-8 was amended by the legislature to provide a cure for deeds failing to comply with the private examination requirements. On earlier appeal in this case, the Court of Appeals held, however, that the deed in question was not cured by N.C.G.S. § 52-8 since the plaintiffs' rights in the property vested in August of 1980 and the relevant amendment to N.C.G.S. § 52-8 was not effective until 1981. *Dunn v. Pate*, 98 N.C. App. at 355, 390 S.E.2d at 715 (citing *West v. Hays*, 82 N.C. App. 574, 346 S.E.2d 690 (1986) ). Thus, the question before us is whether plaintiffs may assert noncompliance with the examination statutes as a basis for setting aside the 1962 deed. Finding the statutes unconstitutional, we hold that they may not.

[1] Before addressing the constitutionality of the statutes in question, we must address plaintiffs' argument that defendants have

not shown an injury in fact and therefore do not have standing to challenge the constitutionality of the private examination statutes. Plaintiffs rely on *Murphy v. Davis*, 61 N.C. App. 597, 599, 300 S.E.2d 871, 873, *cert. denied & appeal dismissed*, 309 N.C. 192, 305 S.E.2d 735 (1983), and *In re Appeal of Martin*, 286 N.C. 66, 209 S.E.2d 766 (1974), to support this contention. We are not persuaded by plaintiffs' argument.

A general rule of standing is that only persons "who have been injuriously affected . . . in their persons, property or constitutional rights" may challenge the validity of a statute. *Canteen Service v. Johnson, Comr. of Revenue*, 256 N.C. 155, 166, 123 S.E.2d 582, 589 (1962); *see also Baker v. Carr*, 369 U.S. 186, 7 L. Ed. 2d 663 (1962). Defendants in this case have alleged that they will be injured in fact by operation of N.C.G.S. § 52-6 if it is enforced because its effect will be to invalidate the 1962 deed and directly deprive them of their bequests under the Will and Codicil of Fairley J. Jackson. We believe that deprivation of property resulting from enforcement of the statute gives these defendants standing to challenge the constitutionality of the statute.

In *Murphy*, on facts very similar to the facts in the present case, the Court of Appeals held that the petitioner had no standing to challenge the constitutionality of the examination statutes. *Murphy*, 61 N.C. App. at 600, 300 S.E.2d at 873. The court correctly stated that the petitioner "must allege she has sustained an 'injury in fact' as a direct result of the statute to have standing." *Id.* However, the court concluded that the petitioner failed to do so because her injury resulted from "her father's failure to comply with the statute, not because the statute was discriminatory as to her." *Id.* To the extent that this conclusion implies that petitioner, the transferee of her father's interest, suffered no direct injury by operation of the statute, *Murphy* is hereby overruled.

However, the Court of Appeals may have reached the conclusion that petitioner in *Murphy* had no standing because one must "belong[ ] to the class which is prejudiced by the statute." *Martin*, 286 N.C. at 75, 209 S.E.2d at 773. Plaintiffs in this case argue that this rule also prevents defendants from challenging the constitutionality of the statute. However, we believe the recognized exception that "allows an affected party to allege discrimination when no member of a class subject to the alleged discrimination is in a position to raise the constitutional question," *id.*, applies

in this case. Both parties to the 1962 deed are now deceased. Defendants are challenging the statute on the basis that enforcement of the statute would work to deprive them of their interest in the property which they received after the 1962 conveyance to Fairley Jackson individually. There is no other party that could appropriately challenge the statute on these facts.

> The "gist of the question of standing" is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentations of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Flast v. Cohen*, 392 U.S. 83, 99, 20 L. Ed. 2d 947, 961, 88 S.Ct. 1942, 1952 (1968).

*Stanley, Edwards, Henderson v. Dept. of Conservation & Development*, 284 N.C. 15, 27, 199 S.E.2d 641, 650 (1973). We are quite satisfied that defendants in this case have a great enough "stake in the outcome of the controversy" to ensure "concrete adverseness." Thus, we hold that defendants have standing to challenge the statutes in question.

[2] In reviewing the constitutionality of the statutes at issue, plaintiffs urge the Court to limit its review to the law as it existed in 1962. Plaintiffs do not contend that the private examination statutes at issue would be constitutional if they were in force today. Rather, plaintiffs argue that the Court should continue to enforce the examination statutes as they relate to deeds executed during that period. We decline to do so.

In *Butler v. Butler*, 169 N.C. 584, 86 S.E. 507, decided in 1915, this Court held that the private examination statute at issue was a "constitutional exercise of legislative power." *Butler*, 169 N.C. at 588, 86 S.E. at 509. The Court has not revisited the issue since that opinion was rendered. However, the North Carolina Constitution has been amended twice since *Butler* in order to provide greater equality under the law. *See* N.C. Const. art. I, § 19 (amended 1970) and art. X, § 4 (amended 1964). In addition, the Fourteenth Amendment to the United States Constitution has been interpreted since that time to provide greater protections against gender-based discrimination. *See, e.g., Reed v. Reed*, 404 U.S. 71, 30 L. Ed. 2d 225 (1971). These changes undoubtedly affected the constitutionality of the statutes prior to their repeal in 1977. We must now decide

whether the private examination statutes were constitutional in 1962 when the deed was executed.

This Court has recognized that the concept of equal protection under the law was inherent in our State Constitution even before the Fourteenth Amendment was explicitly incorporated into it by amendment in 1970. *S.S. Kresge v. Davis*, 277 N.C. 654, 660, 178 S.E.2d 382, 385 (1971). (citing *State v. Glidden Co.*, 228 N.C. 664, 46 S.E.2d 860 (1948); *State v. Fowler*, 193 N.C. 290, 136 S.E. 709 (1927)). The fact that the deed was executed prior to the express incorporation of the Equal Protection Clause into the State Constitution does not mandate a finding that such discrimination was constitutional at the time the deed was executed. Rather, our determination of the constitutionality of the statutes at issue should be resolved under our present understanding of the principle of equal protection. "When a court is required to decide issues of constitutionality, such issues are resolved under the governing law at that time, although operative facts may predate the recognition of the relied-upon constitutional principal [sic]." *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624 (Tex. 1987) (citing *Reed v. Campbell*, 476 U.S. 852, 856, 90 L. Ed. 2d 858, 863 (1986)).

In 1987 the Texas Supreme Court held that a repealed statute that required a husband to join his wife in a conveyance of her separate property and required acknowledgement by the wife "privily and apart from her husband" was unconstitutional under current constitutional standards. *Wessely Energy*, 736 S.W.2d at 626-27. Thus, a wife's failure to comply with the statute in 1954, prior to its repeal, did not invalidate the conveyance made at that time. *Id.* at 628. The Texas Supreme Court observed that the "Texas Equal Rights Amendment was not passed until 1972" and "the Equal Protection Clause of the Fourteenth Amendment was not extended to gender-based discrimination until 1971." *Id.* at 627. Nonetheless, the court stated that

[a]lthough this equal protection analysis was not yet recognized in 1954, we think the wiser course mandates review under standards as we understand them today . . . . By limiting our review to current constitutional analysis, we can resolve constitutional issues without speculating as to the application of constitutional principles or basing a decision of grave importance on conjecture.

DUNN v. PATE

[334 N.C. 115 (1993)]

*Id.* We are persuaded that this is the best approach in the present case.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution has generally been interpreted to prohibit unequal application of the law between the sexes. *See, e.g., Caban v. Mohammed,* 441 U.S. 380, 60 L. Ed. 2d 297 (1979); *Orr v. Orr,* 440 U.S. 268, 59 L. Ed. 2d 306 (1979); *Stanton v. Stanton,* 421 U.S. 7, 43 L. Ed. 2d 688 (1975); *Taylor v. Louisiana,* 419 U.S. 522, 42 L. Ed. 2d 690 (1975); *Reed v. Reed,* 404 U.S. 71, 30 L. Ed. 2d 225 (1971). Gender-based distinctions in the law must "serve important governmental objectives and must be substantially related to achievement of those objectives" in order to satisfy the guarantees of the Equal Protection Clause of the Fourteenth Amendment. *Craig v. Boren,* 429 U.S. 190, 197, 50 L. Ed. 2d 397, 407 (1976). Since 1970 the principle of equal protection of the law has been expressly incorporated in Article I, Section 19 of the North Carolina Constitution. *S.S. Kresge,* 277 N.C. at 660, 178 S.E.2d at 385.

The examination statutes in effect in 1962 required certification by the clerk of court that the conveyance was neither unreasonable nor injurious to the wife. Without the proper certification, the deed was unenforceable. When enacted, the private examination statutes conferred upon women the right to enter into separation agreements, a right which until that time they had been denied. *See Spencer v. Spencer,* 37 N.C. App. 481, 486, 246 S.E.2d 805, 809 (discussing the purpose and rationale of the examination requirements). The examination requirement allowed a wife to void a transaction into which she otherwise competently entered on the sole basis that the contract was not certified. The husband did not have this ability. While the examination statute conferred a new right upon the wife, it also restricted her exercise of that right. It did so for the purpose of protecting the wife from participating in conveyances which were not in her interest. While this may have been a worthy purpose at the time, it nonetheless had the effect of continuing the fiction that formed the basis for so many coverture laws—that a married woman lacked the ability to contract on her own. There was no requirement of certification that a conveyance was neither unreasonable nor injurious to the husband. Thus, the husband had no special protections or constraints under these laws as did the wife.

DUNN v. PATE

[334 N.C. 115 (1993)]

Plaintiffs have offered no argument as to what significant governmental interests, if any, were served by this gender-based distinction in 1962 and we will not speculate as to what those interests may have been. Since the private examination statutes at issue required unequal application of the law while serving no clearly discernable important governmental interest, they were unconstitutional at the time the deed was executed and will not presently be enforced by this Court.

Finally, plaintiffs argue that failure of this Court to enforce N.C.G.S. § 52-6 will only unsettle land titles, contrary to the doctrine of *stare decisis* which promotes stability in the law. Plaintiffs argue that continued enforcement of the statutes "enables people to predict with reasonabl[e] accuracy the consequences of their deeds and business transactions." Defendants, on the other hand, argue that the private examination statutes have "played havoc" with land titles for decades and that a holding of unconstitutionality will finally resolve this problem by allowing buyers, real estate attorneys and title insurers to rely in confidence on the validity of deeds which previously had to be evaluated on a case-by-case "substantial compliance" basis. *See Kanoy v. Kanoy*, 17 N.C. App. 344, 194 S.E.2d 201, *cert. denied*, 283 N.C. 257, 195 S.E.2d 689 (1973). We find it unnecessary to engage in speculation as to whether our decision will tend to settle or unsettle land titles. Such considerations cannot take precedence over our duty to interpret the Constitution, once a constitutional question is clearly presented and necessary to a determination of the case before us.

For the reasons stated above, we hold that the private examination statutes, N.C.G.S. § 52-6 and N.C.G.S. § 47-39, are unconstitutional. Thus, noncompliance with the private examination statutes will not serve as a basis to invalidate the 1962 deed in this case. Summary judgment in defendants' favor was therefore appropriate. The decision of the Court of Appeals is hereby reversed.

REVERSED.

Justice PARKER did not participate in the consideration or decision of this case.