BRANTLEY v. WATSON

[113 N.C. App. 234 (1994)]

JOHNNY BRANTLEY, Petitioner v. DARRELL CROCKET WATSON, Co-Executor of the Estate of RACHEL A. BRANTLEY and WILLIAM WOODWARD WEBB, Respondents and IN THE MATTER OF THE ESTATE OF RACHEL A. BRANTLEY, Deceased

No. 9210SC1008

(Filed 4 January 1994)

1. **Husband and Wife § 28 (NCI4th) — postnuptial agreement — no privy examination of wife — agreement not set aside**

     A postnuptial agreement executed between a husband and wife could not be set aside due to any alleged noncompliance with N.C.G.S. §§ 52-6 or 52-10 because the principle of equal protection under the law makes gender based discrimination presumptively unconstitutional.

     **Am Jur 2d, Husband and Wife §§ 264, 265.**

2. **Executors and Administrators § 108 (NCI4th) — year's allowance — inapplicability of postnuptial agreement**

     A postnuptial agreement in which the husband renounced his N.C.G.S. § 30-1 right to dissent from the wife's will did not include forfeiture of the spousal right to a year's allowance pursuant to N.C.G.S. § 30-15.

     **Am Jur 2d, Descent and Distribution §§ 115 et seq.**

Appeal by petitioner from order entered 17 August 1992 by Judge Robert L. Farmer in Wake County Superior Court. Heard in the Court of Appeals 16 September 1993.

*Sink, Powers, Sink & Potter, by Charles F. Powers III and Henry H. Sink, Jr., for petitioner-appellant.*

*Broughton, Wilkins, Webb & Jernigan, by Charles P. Wilkins and Roy J. Baroff, for respondents-appellees.*

JOHNSON, Judge.

This action centers around the validity of a postnuptial agreement between Rachel A. Brantley (decedent) and Johnny Brantley (husband-petitioner). The postnuptial agreement was signed 1 February 1977, and Rachel A. Brantley died testate on 21 November 1991. On 3 February 1992, petitioner filed his dissent from the will of Rachel A. Brantley and his petition for a year's allowance.

On 25 February 1992, respondents filed responses which contained Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted. Both responses contained the defense of the postnuptial agreement as a bar to petitioner's dissent and application for a year's allowance. Respondents also filed a motion for judgment on the pleadings.

The clerk of superior court consolidated these cases and entered an order on 18 May 1992 denying each of respondents' motions. The clerk ruled that the postnuptial agreement was void as a matter of law because it did not meet the provisions of North Carolina General Statutes § 52-10 (1976) and North Carolina General Statutes § 52-6 (1976) (repealed 1977) in effect at the time of the signing of the agreement. Respondents appealed to superior court.

The trial court's findings of fact were as follows:

(1) On September 6, 1973 Rachel A. Brantley and Johnny Brantley were married.

(2) On February 1, 1977 Rachel A. Brantley and Johnny Brantley entered into a postnuptial agreement whereby each released, renounced and quitclaimed any and all rights accorded to each of them under Article 1 of Chapter 30 of the N.C. General Statutes, to dissent from the will of the other if surviving. Both signed the agreement before a Notary Public and no privy examination was given to the wife.

(3) On November 21, 1991 Rachel A. Brantley died testate survived by her husband, Johnny Brantley.

(4) On February 3, 1992 Johnny Brantley filed a dissent from the will of Rachel A. Brantley . . . and his application for a year's allowance[.] . . .

(5) On May 18, 1992 the Clerk of Superior Court entered an order denying motions to dismiss the dissent and application for a year's allowance on the grounds that the agreement dated February 1, 1977 was void because of its failure to comply with the provisions of G.S. 52-6 and G.S. 52-10 as they existed at the time of the execution of the agreement.

(6) Neither Rachel A. Brantley or Johnny Brantley questioned the validity of the agreement nor attempted to revoke it prior to the death of Rachel A. Brantley.

The trial court found the following conclusions of law:

> Since neither Rachel A. Brantley or Johnny Brantley revoked the agreement during the wife's life, the agreement should be binding on the husband, Johnny Brantley, after her death. An agreement between a husband and wife dealing with the testamentary disposition of their properties is not binding upon the wife during her lifetime unless the procedure prescribed by G.S. 52-6 was followed. During the wife's life, such agreement, not properly acknowledged pursuant [sic] G.S. 52-6, is not binding on the husband either since, as to him, there is a failure of consideration. However, when the wife dies leaving unchanged the agreement dealing with the testamentary disposition of the properties, the agreement should be binding upon the husband. Their minds met on a particular testamentary disposition of their properties to accomplish a particular purpose and they both intended the agreement and their wills, made pursuant thereto, to remain unrevoked at their deaths. The agreement may be revocable during their joint lives so far as it relates to the testamentary disposition of their property but it should be irrevocable after the death of one of them. The wife complied with and never revoked or breached the terms of the agreement during her lifetime and thus the husband should also be bound by the terms of the agreement dealing with the testamentary disposition of property. Equity should enforce the agreement.

From the trial court's order, petitioner gave notice of appeal to our Court.

Petitioner first argues the trial court committed reversible error in reversing the ruling of the clerk of superior court and allowing respondents' motions to dismiss because no evidence was introduced to support the trial court's findings of fact and conclusions of law.

A Rule 12(b)(6) motion is based on a party's failure to state a claim upon which relief can be granted. North Carolina General Statutes § 1A-1, 12(b)(6) (1990). A complaint must be dismissed when it is clear from the face of the complaint that the plaintiff cannot recover, that some essential fact is missing in regard to plaintiff's case, or a fact is revealed in the plaintiff's case which defeats the action. *Piedmont Ford Truck Sale v. City of Greensboro,*

BRANTLEY v. WATSON

[113 N.C. App. 234 (1994)]

90 N.C. App. 692, 370 S.E.2d 262, *disc. review allowed*, 323 N.C. 477, 373 S.E.2d 866 (1988).

We note that in the case *sub judice*, the clerk of superior court denied respondents' motions to dismiss upon finding that the postnuptial agreement was void as a matter of law. Respondents then appealed to the judge of the superior court, who reviewed the appeal, with findings of fact and conclusions of law. Because the trial judge heard evidence in the form of oral arguments and undisputed facts from counsel, this Rule 12(b)(6) motion was converted into a Rule 56 motion for summary judgment. *Privette v. University of North Carolina*, 96 N.C. App. 124, 385 S.E.2d 185 (1989). North Carolina General Statutes § 1A-1, Rule 12(b) (1990) provides in pertinent part:

> If, on a motion asserting the defense numbered (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

This assignment of error is overruled.

Petitioner next argues the trial court committed reversible error in reversing the ruling of the clerk of superior court and allowing respondents' motions to dismiss because the trial court treated the 1 February 1977 agreement between decedent and petitioner as a contract to make a joint will. We find the reference to *Olive v. Biggs*, 276 N.C. 445, 173 S.E.2d 301 (1970) and *Mansour v. Rabil*, 277 N.C. 364, 177 S.E.2d 849 (1970) in the trial court's order was not an indication that the trial court treated the contract as a joint will.

Petitioner further argues the trial court committed reversible error in reversing the ruling of the clerk of superior court and allowing respondents' motions to dismiss because the agreement dated 1 February 1977 between decedent and petitioner was absolutely void as a matter of law.

The law as it existed on 1 February 1977 relative to "contracts between husband and wife generally" was found in North Carolina General Statutes § 52-10:

Contracts between husband and wife not forbidden by G.S. 52-6 and not inconsistent with public policy are valid, and any persons of full age about to be married, and, subject to G.S. 52-6, any married persons, may, with or without a valuable consideration, release and quitclaim such rights which they might respectively acquire or may have acquired by marriage in the property of each other; and such releases may be pleaded in bar of any action or proceeding for the recovery of the rights and estate so released.

North Carolina General Statutes § 52-6 reads:

(a) No contract between husband and wife made during their coverture shall be valid to affect or change any part of the real estate of the wife, or the accruing income thereof for a longer time than three years next ensuing the making of such contract, nor shall any separation agreement between husband and wife be valid for any purpose, unless such contract or separation agreement is in writing, and is acknowledged before a certifying officer who shall make a private examination of the wife according to the requirements formerly prevailing for conveyance of land.

(b) The certifying officer examining the wife shall incorporate in his [/her] certificate a statement of his [/her] conclusions and findings of fact as to whether or not said contract is unreasonable or injurious to the wife. The certificate of the officer shall be conclusive of the facts therein stated but may be impeached for fraud as other judgments may be.

(c) Such certifying officer must be a justice, judge, magistrate, clerk, assistant clerk or deputy clerk of the General Court of Justice or the equivalent or corresponding officers of the state, territory or foreign country where the acknowledgment and examination are made and such officer must not be a party to the contract.

This form of acknowledgement which was required in North Carolina General Statutes § 52-6 was set out in North Carolina General Statutes § 47-39 (1976) (repealed 1977).

North Carolina General Statutes § 52-8 (1991) is a curative statute which has been amended through the years. This statute seeks to validate contracts which fail to comply with the provisions

of North Carolina General Statutes § 52-6. North Carolina General Statutes § 52-8 reads:

> Any contract between husband and wife coming within the provisions of G.S. 52-6 executed between January 1, 1930 and January 1, 1978, which does not comply with the requirement of a private examination of the wife or with the requirements that there be findings that such a contract between a husband and wife is not unreasonable or injurious to the wife and which is in all other respects regular is hereby validated and confirmed to the same extent as if the examination of the wife had been separate and apart from the husband. This section shall not affect pending litigation.

The particular question herein is whether the contract signed 1 February 1977 by the decedent and the petitioner is void, considering that this contract does not comply with the requirements of a private examination of the wife, that it does not contain findings that the contract is not unreasonable or injurious to the wife, and that it may not have been acknowledged by a proper party.

[1] We need not address this question because of our Supreme Court's recent decision in *Dunn v. Pate*, 334 N.C. 115, 431 S.E.2d 178 (1993). The Court held in *Dunn* that noncompliance with North Carolina General Statutes § 52-6 may not set aside a deed executed in 1962 because "the principle of equal protection under the law . . . makes gender-based discrimination presumptively unconstitutional." *Dunn*, 334 N.C. at 116, 431 S.E.2d at 179. Therefore, we find that this agreement, executed 1 February 1977 between Rachel A. Brantley and Johnny Brantley, may not be set aside due to any alleged noncompliance with North Carolina General Statutes §§ 52-6 or 52-10.

We find the agreement dated 1 February 1977 between decedent and petitioner is not void as a matter of law and that the trial court was correct in reversing this ruling of the clerk of superior court. The trial court properly allowed respondents' motions to dismiss as to petitioner's dissent from the will of Rachel A. Brantley.

[2] Petitioner's final argument is that the trial court committed reversible error in reversing the ruling of the clerk of superior court and allowing respondents' motion to dismiss as to petitioner's application for a year's allowance because the 1 February 1977

agreement between decedent and petitioner had no application what-soever to petitioner's right to a year's allowance. We agree with petitioner.

The wording in the contract at issue in this case reads "[the] party of the second part hereby releases, renounces and quitclaims any and all rights accorded to him under Article 1 of Chapter 30 of the North Carolina General Statutes, to dissent from the will of party of the first part should he survive her, both as to property now owned by party of the first part and property hereafter acquired." North Carolina General Statutes § 30-1 (1984) deals specifically with the statutory right to dissent.

North Carolina General Statutes § 30-15 (1984) reads "[e]very surviving spouse of an intestate or of a testator, whether or not he has dissented from the will, shall, unless he has forfeited his right thereto as provided by law, be entitled . . . to an allowance of the value of five thousand dollars[.]" We find that the express language in the agreement, referring only to North Carolina General Statutes § 30-1, should not be interpreted to include forfeiture also of the spousal right to a year's allowance found in North Carolina General Statutes § 30-15. Therefore, the trial court erred in reversing the ruling of the clerk of superior court allowing respondents' motion to dismiss as to petitioner's application for a year's allowance.

The decision of the trial judge is affirmed in part and reversed in part.

Judges COZORT and McCRODDEN concur.