WAKE FOREST GOLF & COUNTRY CLUB, INC., PLAINTIFF v. TOWN OF WAKE FOREST, VIVIAN A. JONES, IN HER OFFICIAL CAPACITY AS MAYOR, CHRIS KAEBERLEIN, ANNE HINES, FRANK DRAKE, PETE THIBODEAU, MARGARET STINNETT, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE WAKE FOREST BOARD OF COMMISSIONERS, DEFENDANTS

No. COA10-972

(Filed 21 June 2011)

**1. Zoning— modification of special use permit—estoppel**

The trial court did not err in a declaratory judgment action by concluding that defendant town's refusal to consider and act upon plaintiff's 2009 application for a modification to a special use permit was not unlawful. Plaintiff was estopped from attacking the zoning ordinance because it voluntarily designated the golf course as open space.

**2. Declaratory Judgments— writ of mandamus—mandatory injunction**

The trial court did not err in a declaratory judgment action by concluding that plaintiff was not entitled to a writ of *mandamus* or a mandatory injunction because plaintiff had no right to demand that the Board of Commissioners consider its 2009 application for a modification to a special use permit.

Appeal by plaintiff from judgment entered 6 July 2010 by Judge Shannon R. Joseph in Wake County Superior Court. Heard in the Court of Appeals 26 January 2011.

**WAKE FOREST GOLF & COUNTRY CLUB, INC. v. TOWN OF WAKE FOREST**

[212 N.C. App. 632 (2011)]

*The Brough Law Firm, by Michael B. Brough, for plaintiff-appellant.*

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene, Charles George, and Tobias S. Hampson, for defendant-appellees.*

STEELMAN, Judge.

Where Wake Forest Golf & Country Club, Inc. (WFGCC) voluntarily designated its entire golf course as open space in its 1999 PUD application and subsequently exercised the right to develop the property in accordance with the special use permit, the Wake Forest Board of Commissioners did not abuse its discretion when it refused to consider WFGCC's 2009 application to reduce the area covered by the special use permit in order to selectively develop the remaining property for residential use. Where WFGCC had no right to demand that the Board of Commissioners consider its 2009 application, it was not entitled to the issuance of a writ of mandamus or to injunctive relief.

## I. Factual and Procedural Background

WFGCC owned a 165.5 acre tract of real property located in Wake Forest and used 149 acres as a golf course and county club. In 1998, WFGCC sold approximately 16 acres of the property to Oakmark Development Co., LLC (Oakmark) for the development of a Planned Unit Development (PUD) contingent upon approval by the Town of Wake Forest (Wake Forest). On 4 February 1999, Oakmark submitted an application for a special use permit (1999 application) authorizing the construction of the PUD. The proposed PUD included four small tracts of land to be developed as follows: Tract 1 (5.5 acres)—twenty townhomes; Tract 2 (4.45 acres)—ten townhomes; Tract 3 (1.7 acres)—six "zero lot line" homes[1]; and Tract 4 (5 acres)—commercial. In 1999, the property was zoned R-40W by Wake Forest, which allowed a maximum density of one dwelling unit per acre and required that 25% of the acreage within the PUD remain as open space. The tracts of land that Oakmark intended to purchase and develop did not meet the above requirements. The zoning ordinance required additional open space from the remainder of WFGCC's property to be included in the development.

Because the golf course had been existence for 32 years and WFGCC intended to continue to operate the golf course, WFGCC did

---

1. Prior to approval, the 1999 application was amended to delete the six "zero lot line" homes from Tract 3, reducing the total number of proposed residences to 30.

not deem it necessary to designate a specific portion of its property for inclusion in the PUD, and the entire 149 acres of golf course was designated as open space in the 1999 PUD application. On 18 May 1999, the Wake Forest Board of Commissioners approved a special use permit authorizing development of the PUD. One of the specific conditions of approval was that "[t]he entire acreage of the [WFGCC] shall be subject to the provisions and conditions of the special use permit and master plan as approved including, but not limited to, calculations of density, open space, and impervious surface area." Upon approval, WFGCC sold Oakmark Tracts 1, 2, and 4. Oakmark developed 20 townhomes on Tract 1, which is known as Fairway Villas. In 2005, Wake Forest approved a revised plan for Tract 2 and Oakmark developed 10 single-family detached homes known as Clubhouse Villas. Tract 4 was sold to Wake Union Baptist Church and remains undeveloped.

Over time, the golf course and country club became economically infeasible to operate and in November of 2007 it was closed. WFGCC began to investigate alternative uses for the property and determined it would be best to selectively develop the property for residential use. WFGCC entered into a contract to sell its remaining property to a professional real estate developer, contingent upon approval by Wake Forest of a development plan. On 10 December 2007, several individuals residing near the property and the homeowners association of Fairway Villas filed a complaint against WFGCC, Oakmark, Wake Forest, and Joel R. Young, WFGCC's president, individually, alleging that WFGCC's property had to remain in use as a golf course in perpetuity in accordance with the 1999 PUD. After defendants filed motions for summary judgment, the plaintiffs voluntarily dismissed their action on 22 May 2008.

On 1 September 2009, WFGCC submitted an application to Wake Forest for a modification of the 1999 special use permit. WFGCC sought to "remove from the coverage of the existing [special use permit] that portion of the Remaining Property that is not necessary to comply with the density, open space, impervious surface, and other requirements of the Ordinance related to the approved or constructed residential components (i.e. Tracts 1 and 2) of the original PUD." The 2009 application also sought to delete Tract 4 from the PUD. WFGCC proposed to reduce the area covered by the special use permit from 165.5 acres to 40 acres to comply with the minimum requirements for

2. Because of the litigation described above, the contract to sell was never executed and no development application was submitted to Wake Forest.

a residential PUD that included "cluster development" such as Fairway Villas and Clubhouse Villas.

On 15 December 2009, the Wake Forest Board of Commissioners elected not to conduct a public hearing or otherwise consider the 2009 application. On 14 January 2010, WFGCC filed a complaint against Wake Forest, Vivian A. Jones, in her official capacity as Mayor, and Chris Kaeberlein, Anne Hines, Frank Drake, Pete Thibodeau, and Margaret Stinnett, in their official capacities as members of the Wake Forest Board of Commissioners (collectively, defendants) and alleged that it was entitled to a declaratory judgment that the Board of Commissioners' refusal to consider the 2009 application was in violation of Article I, Section 19 of the North Carolina Constitution and was otherwise unlawful. WFGCC also sought a writ of mandamus or a mandatory injunction requiring the Board of Commissioners to consider the 2009 application. On 23 February 2010, defendants filed separate motions to dismiss pursuant to Rule 12(b)(6). On 7 April 2010, WFGCC filed a motion for summary judgment.

This matter was heard on 8 June 2010 before Judge Joseph in the Superior Court of Wake County. On 11 June 2010, the trial court entered an order granting defendants' motions to dismiss Vivian A. Jones, Chris Kaeberlein, Anne Hines, Frank Drake, Pete Thibodeau, and Margaret Stinnett. In an order filed 6 July 2010, the trial court (1) denied WFGCC's motion for summary judgment; (2) converted Wake Forest's motion to dismiss into a motion for summary judgment; and (3) granted Wake Forest's motion for summary judgment and dismissed WFGCC's action with prejudice.

WFGCC only appeals the 6 July 2010 order.

## II. Standard of Review

The standard of review of a trial court's ruling on a motion for summary judgment is *de novo. Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). "All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citation omitted).

### III. Refusal to Consider 2009 Application

**[1]** In its first argument, WFGCC contends that Wake Forest's refusal to consider and act upon its 2009 application as required by its own ordinance violated Article I, Section 19 of the North Carolina Constitution and was otherwise unlawful. We disagree.

The Wake Forest Board of Commissioners relied upon our Supreme Court's decision in *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 388 S.E.2d 538 (1990), in refusing to process or consider WFGCC's 2009 application. In *River Birch*, the plaintiff-developer filed an application with the City of Raleigh for subdivision and site plan approval for a 144-unit townhome project on 19.6 acres · to be known as Riverbirch Township. *Id.* at 104, 388 S.E.2d at 540. The preliminary site plan and landscaping plan depicted a three-acre common area set aside for recreational purposes. *Id.* In 1980, the Raleigh City Council approved the site plan. *Id.* Riverbirch Township was subsequently developed and townhomes were sold according to the site plan. *Id.* It was undisputed that the three-acre common area was not necessary to meet the requirements of the ordinance for the 16.6 acres that were developed. *Id.* at 105, 388 S.E.2d at 540-41.

In December of 1985, River Birch filed a new site plan proposing the construction of twenty-nine townhomes on the three-acre common area, which was designated as "Marsh Creek Townes." *Id.* at 105, 388 S.E.2d at 541. On 2 September 1986, River Birch submitted its application for approval of the new site plan. *Id.* The City Council refused to process the application because the three-acre parcel had been set aside as common area in the plan approved by the City in 1980, even though the preliminary plat met the minimum requirements of the Raleigh ordinance. *Id.*

Our Supreme Court affirmed the City's decision. River Birch argued that the refusal to process its application for the development of Marsh Creek Townes constituted an improper exercise of the City's police power for private purposes and that it was a violation of due process under Article I, section 19 of the North Carolina Constitution. *Id.* at 115, 388 S.E.2d at 546. Our Supreme Court rejected these arguments and held:

> that where a developer submits a project plan for approval and undertakes the development of the property according to the approved preliminary plan, a city may refuse to consider a subsequent stage of the overall project that fails to take into account

the prior development as proposed and undertaken in the prior stages of development.

*Id.*

In expounding on the reasoning for its holding, the Court stated that the refusal to process the application was not an abuse of police power because the City was merely enforcing established standards. *Id.* at 117, 388 S.E.2d at 548. The Court also emphasized that River Birch had taken "advantage of the benefits that accrued as a result of voluntarily depicting common area in its preliminary plat. Upon approval of its plan, River Birch received and exercised the right to cluster the development and effectively increase the housing density to greater than otherwise allowed under the zoning ordinance." *Id.* at 119, 388 S.E.2d at 549. The Court would not allow River Birch to "attack a condition of its own making which the City ha[d] accepted." *Id.*

The facts of *River Birch* are materially indistinguishable from those in the instant case. On 4 February 1999, Oakmark submitted an application for a special use permit authorizing the construction of the proposed PUD. The entire 149 acres of golf course was designated as open space within the PUD. The Wake Forest Board of Commissioners approved a special use permit authorizing the development of the PUD. An express condition of approval was that "[t]he entire acreage of the [WFGCC] shall be subject to the provisions and conditions of the special use permit and master plan as approved including, but not limited to, calculations of density, open space, and impervious surface area." Oakmark subsequently developed the property in accordance with the approved PUD and special use permit.

Several years later, WFGCC filed an application to alter the special use permit to reduce the area covered by the permit from 165.5 acres to 40 acres in order to selectively develop the property for residential use. This reduction represented the portion of the property that was not necessary to comply with the requirements of the ordinance related to the approved residential components of the original PUD. The Wake Forest Board of Commissioners elected not to conduct a public hearing or otherwise consider the 2009 application.

WFGCC argues that "the consequence of the Town of Wake Forest's refusal to consider WFGCC's application is that 150 acres of plaintiff's land . . . must forever remain as open space, in return for which plaintiff was allowed to sell five acres to a church and a total of ten acres for the development of thirty homes." However, WFGCC voluntarily designated the entire golf course as open space in the pro-

posed PUD and, upon approval of the special use permit, "received and exercised the right to cluster the development and effectively increase the housing density to greater than otherwise allowed under the zoning ordinance." *Id.* WFGCC is estopped from attacking its own condition which Wake Forest accepted. *Id.*

Because the facts of the instant case are materially indistinguishable from those in *River Birch*, we are bound by its holding. *See Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993) (this Court has "no authority to overrule decisions of the Supreme Court and has the responsibility to follow those decisions until otherwise ordered by the Supreme Court." (Quotations and alterations omitted)).

WFGCC attempts to distinguish the holding in *River Birch by citing Robins v. Town of Hillsborough*, 361 N.C. 193, 639 S.E.2d 421 (2007), for the proposition that Wake Forest's decision must be reversed on the basis that it failed to comply with its own rules of procedure. In *Robins*, the plaintiff filed an application for the approval of his site development plan to construct an asphalt plant. *Id.* at 194, 639 S.E.2d at 422. Three hearings were held to consider the plaintiff's site development plan. *Id.* at 194-95, 639 S.E.2d at 422. The same day as the third hearing, plaintiff's case was continued and the Town of Hillsborough issued a notice of hearing on a proposed moratorium on asphalt plants. *Id.* at 195, 639 S.E.2d at 422. The moratorium was subsequently approved and the defendant's fourth hearing was cancelled. *Id.* at 195, 639 S.E.2d at 422-23.

Our Supreme Court castigated the Town of Hillsborough for violating its own procedures:

> Instead of following the proper procedures by which the Board of Adjustment would have rendered an up or down decision on plaintiff's application, defendant, acting through its Board of Commissioners, passed the moratorium and eventually amended the ordinance, effectively usurping the Board of Adjustment's responsibility in the matter. In essentially dictating by legislative fiat the outcome of a matter which should be resolved through quasi-judicial proceedings, defendant did not follow its own ordinance pertaining to the disposition of site specific development plans, thus leaving the Town Board no defense to the charge that its actions were arbitrary and capricious.

*Id.* at 199, 639 S.E.2d at 425.

The holding in *Robins* is inapposite to the instant case. *Robins* dealt with the initial issuance of a permit to develop a site plan for the construction of an asphalt plant, not a modification of an existing permit. In this case, Wake Forest did, in fact, follow its own procedures in issuing WFGCC a special use permit in 1999. WFGCC voluntarily designated the golf course as open space and subsequently developed the property in accordance with the approved PUD and the special use permit.

Under existing law enunciated by our Supreme Court, the Wake Forest Board of Commissioners had the discretion to refuse to process or consider WFGCC's 2009 application for a modification to the special use permit. This argument is without merit.

### IV. Writ of Mandamus or Injunctive Relief

[2] In its second argument, WFGCC contends that it is entitled to a writ of mandamus or a mandatory injunction. We disagree.

It is well-established that

> a party seeking the writ . . . must have a clear legal right to demand it, and the party to be coerced must be under a positive legal obligation to perform the act sought to be required. The function of the writ is to compel the performance of a ministerial duty—not to establish a legal right, but to enforce one which has been established.

*Meares v. Town of Beaufort,* 193 N.C. App. 49, 55, 667 S.E.2d 244, 249 (2008) (internal quotations and alterations omitted). As set forth above, WFGCC has no right to demand that the Board of Commissioners consider its 2009 application.

This argument is without merit.

AFFIRMED.

Judges ELMORE and ERVIN concur.